603 F.2d 1247
 20 Fair Empl.Prac.Cas. 551,
20 Empl. Prac. Dec. P 30,216
Dolores MUHICH, Plaintiff-Appellant,
v.
William W. ALLEN, Ivan A. Elliott, Jr., Harold R. Fischer,
Michael J. Bakalis, Martin V. Brown, Melvin C.
Lockard, Earl Walker, John J. Cody, and
Elmer J. Clark, Defendants-Appellees.
 No. 78-1817.
 United States Court of Appeals,
Seventh Circuit.
 Argued March 1, 1979.
Decided Aug. 1, 1979.
Rehearing and Rehearing En Banc Denied Sept. 25, 1979.
 
 C. David Nelson, Harrisburg, Ill., for plaintiff-appellant.
 John C. Feirich, Carbondale, Ill., for defendants-appellees.
 Before SWYGERT, SPRECHER and BAUER, Circuit Judges.
 BAUER, Circuit Judge.
 
 
 1
 Plaintiff-appellant Dolores Muhich appeals from the order of the district court granting judgment in favor of the defendants-appellees on her amended complaint, in which she sought civil damages under 42 U.S.C. § 1983 for alleged discriminatory employment practices. Appellant further appeals from the order of the district court denying her motion for a new trial.
 
 
 2
 First, appellant challenges the adjudicatory procedure utilized by the district court, in which the trial of this action was referred to a United States Magistrate, and the district court, upon De novo review of the proceedings, adopted the findings and recommendations of the magistrate and ordered the entry of final judgment upon the verdicts of the magistrate and the jury. Appellant contends that the order of reference to the magistrate, entered pursuant to the stipulation of the parties, was Void ab initio because a civil trial before a magistrate is neither sanctioned by article III of the United States Constitution, the Magistrates Act (28 U.S.C. § 631 Et seq.), any local court rule, nor the consent of the parties. Appellant further asserts that the subsequent order of the district court, directing the entry of final judgment on the verdicts rendered by the magistrate and the jury, did not cure this allegedly invalid delegation of adjudicatory authority by the district court.
 
 
 3
 Second, appellant contends she was denied a fair trial by the cumulative effect upon the jurors of erroneously admitted evidence and improper argument by defense counsel, and that the district court therefore abused its discretion in denying her motion for a new trial.
 
 
 4
 We are unpersuaded by the arguments advanced in support of these contentions, and accordingly affirm the judgment appealed from for the reasons set forth below.
 
 
 5
 * This is an appeal from an action brought by Dr. Dolores Muhich, formerly an assistant professor at Southern Illinois University, Carbondale, Illinois, against certain members of the University Board of Trustees, the Dean of the College of Education, and the Chairman of the Department of Guidance and Educational Psychology, seeking damages for employment discrimination on the basis of sex.
 
 
 6
 Appellant filed her amended complaint on August 25, 1975, alleging that defendants, acting under color of state law, had discriminated against her by reason of her sex and had denied to her the equal protection of the laws, privileges, and immunities accorded to male citizens of the United States in violation of 42 U.S.C. § 1983 and the Fourteenth Amendment.
 
 
 7
 The alleged discriminatory acts against Dr. Muhich included compensating her at a lower salary than that paid to male assistant professors; employing her under less favorable terms and conditions as those under which male faculty members of equal or lesser academic rank were employed; and terminating her employment without good cause by reason of her sex. The amended complaint further alleged that, as a result of defendants' discriminatory acts, Dr. Muhich had been deprived of her employment and denied the opportunity to acquire tenure and other benefits of employment and had been unable to progress in her profession. The appellant sought money damages in the amount of $250,000.
 
 
 8
 On April 4, 1977, at the conclusion of various pre-trial matters, Chief Judge Wise, of the United States District Court for the Eastern District of Illinois, entered the following order:
 
 
 9
 "It Is Ordered That, in accordance with Title 28 U.S.C. 636, Rule 38 of the Rules of Practice for the United States District Court, Eastern Division of Illinois, and pursuant to stipulation of the parties, this matter is referred to United States Magistrate Kenneth J. Meyers, for purposes of conducting all proceedings, including trial and the entry of final judgment."
 
 
 10
 On February 28, 1978, the cause was tried before Magistrate Meyers and a jury in Benton, Illinois. At the close of appellant's case on February 28, the magistrate granted defendants' motion for a directed verdict as to the members of the Board of Trustees. On March 1, 1978, the jury returned verdicts in favor of the remaining defendants, Dean Clark and Department Chairman Cody, and the magistrate ordered the entry of judgment on the verdicts. The appellant filed a timely motion for a new trial, which was subsequently denied by the magistrate in an order entered April 4, 1978.
 
 
 11
 On May 23, 1978, the magistrate filed with the district court a document entitled "Report and Recommendation", in which the magistrate reported to the court the entry of an order granting defendants' motion for a directed verdict as to the board members, and the entry of an order granting judgment in favor of the other defendants on the jury verdict. Appended to the Report was a copy of the transcript of the proceedings, together with copies of the defendants' motion for a directed verdict, appellant's motion for a new trial, and the magistrate's order denying the appellant's motion.
 
 
 12
 Drawing the attention of the district court to this Court's opinion in Taylor v. Oxford, 575 F.2d 152 (7th Cir. 1978), decided subsequent to the trial and the order granting judgment by the magistrate in this case, the magistrate concluded that the orders he had entered on the verdicts did not constitute final, appealable decisions. Accordingly, the magistrate recommended to the district court that it find the order directing a verdict as to the defendant trustees, the jury verdict, and the order denying appellant's motion for a new trial trial, were supported by the evidence adduced at trial and by the law applied thereto. The magistrate further recommended that the district court order the clerk to enter final judgment on the jury verdict, and that the court deny appellant's motion for a new trial, and otherwise adopt and affirm the rulings and orders of the magistrate.
 
 
 13
 On June 15, 1978, Chief Judge James L. Foreman, of the United States District Court for the Eastern District (now Southern District) of Illinois, entered an order affirming and adopting the rulings and orders of the magistrate, and directing the clerk of the district court to enter final judgment on the jury verdict. In his order, Chief Judge Foreman stated, Inter alia :
 
 
 14
 "This case is before the Court to review the Report and Recommendation of Magistrate Kenneth J. Meyers filed May 23, 1978. Neither party has filed objections to the Magistrate's Report and Recommendation, although more than ten (10) days has elapsed since the Report and Recommendation was served. The Court has reviewed the Report and Recommendation of the Magistrate, the transcript of proceedings, the various motions which were filed during and subsequent to the trial, and the jury verdict. The Court is convinced after having reviewed the entire record that the Orders of the Magistrate and the jury verdict are supported by the evidence presented and the law applicable thereto."
 
 
 15
 Appellant then appealed to this Court, contending that the order of reference to a United States Magistrate for the purpose of trial was Void ab initio on the grounds that a magistrate is without jurisdiction to conduct civil trials, and that the subsequent order of the district court directing the entry of final judgment in favor of the defendants did not cure this allegedly invalid delegation of adjudicatory authority. Appellant further contends that the magistrate committed certain errors in the conduct of the jury trial which mandated that her motion for a new trial should have been granted.
 
 II
 
 16
 Appellant's primary contention on appeal is that the adjudicatory procedure utilized by the district court, in which the trial of this cause was referred to a United States Magistrate pursuant to the consent of the litigants, was constitutionally and statutorily infirm. Notwithstanding the fact that the reference was consensual, the appellant, relying upon the decision of this Court in Taylor v. Oxford, 575 F.2d 152 (7th Cir. 1978), argues that the district court was not empowered either by article III, the Magistrates Act, any local court rule, or the consent of the parties, to confer authority upon the magistrate to conduct the trial of this action. We disagree.
 
 
 17
 First, we note that appellant's reliance on Taylor v. Oxford,supra, is misplaced. Contrary to the appellant's analysis of Taylor, this Court did not hold unconstitutional consensual references to a United States Magistrate pursuant to an order of the district court. In Taylor, we merely held that magistrates are not empowered to enter final judgments and that this Court is therefore without jurisdiction to entertain direct appeals from judgments entered upon the orders of a United States Magistrate. Taylor v. Oxford, supra at 153. Accord, United States v. Reeds, 552 F.2d 170 (7th Cir. 1977); Sick v. City of Buffalo, N.Y., 574 F.2d 689 (2d Cir. 1978). In the case at bar, unlike the situation presented in Taylor, the judgment appealed from is a final decision of a United States district court, and our jurisdiction is accordingly based upon 28 U.S.C. § 1291.
 
 
 18
 Second, we conclude the procedure utilized by the district court in this case was constitutionally and statutorily permissible. See DeCosta v. Columbia Broadcasting System, Inc., 520 F.2d 499 (1st Cir. 1975). The appellant argues that an article III court cannot abjure its adjudicatory responsibility and therefore the district court is without power to invest other non-article III judicial officers, such as magistrates, with pervasive judicial authority to conduct civil trials. However, appellant misapprehends the nature of the delegation of adjudicatory authority in this instance.
 
 
 19
 Article III commands that the judicial power of the United States be vested in article III courts. The reference procedure employed in this case did not constitute a divestiture of this power. Magistrates, as article I judicial officers, are appointed to a term of office by the judges of each United States district court, and are therefore officers of the district court. 28 U.S.C. § 631. As such, magistrates are subject at all times to the direction, supervision, and control of the district courts. Thus, when a civil case properly within the jurisdiction of an article III court is tried before a magistrate pursuant to an order of reference by the district court, jurisdiction remains vested in the district court and is merely exercised through the medium of the magistrate. T.P.O., Inc. v. McMillen, 460 F.2d 348, 353 (7th Cir. 1972). In this case, the district court retained its jurisdiction over the litigation by exercising its supervisory powers in the form of De novo review, and by invoking its exclusive authority to order the entry of final judgment. The strictures of article III were therefore satisfied. See Mathews v. Weber, 423 U.S. 261, 270, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976); United States v. Raddatz, 592 F.2d 976, 982 (7th Cir. 1979); Sick v. City of Buffalo, N.Y., 574 F.2d 689, 693 (2d Cir. 1978); Noorlander v. Ciccone, 489 F.2d 642, 648 (8th Cir. 1973).
 
 
 20
 Nor does this appeal present countervailing constitutional considerations, where, for example, in a criminal case the circumstances mandate extending the full measure of judicial process to the defendant, E. g., United States v. Raddatz, 592 F.2d 976 (7th Cir. 1979), or where the parties to civil litigation insist upon judicial resolution before an article III court, E. g., LaBuy v. Howes Leather Co., 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957). Absent such considerations, we find no constitutional infirmity where the litigants have voluntarily and knowingly agreed to waive their right to a civil trial before an article III judge.
 
 
 21
 Appellant further contends that even if the consensual reference to a magistrate for purposes of conducting a civil trial was constitutionally permissible, the reference was not sanctioned by the Magistrates Act or any local court rule. We find this contention meritless. The order of reference was stated to be in accordance with Section 636 of the Magistrates Act and Rule 38 of the United States District Court for the Eastern District of Illinois. Section 636(b)(3)[1] of the Act permits magistrates to undertake additional duties consistent with the Constitution and laws of the United States, and Section 636(b)(4)[2] of the Act requires the district courts to establish rules governing the discharge of such duties. Accordingly, Rule 38(b)(5)(C)[3] confers upon magistrates the authority to conduct the trial of civil cases with the consent of the parties. The order of reference in this case, entered by the district court upon the written consent of the parties, was therefore in compliance with the applicable statutory provisions of the Magistrates Act and the rules of the district court adopted pursuant thereto.
 
 
 22
 Moreover, the procedures employed subsequent to the reference comported with the statute. Following the conduct of the trial, the magistrate filed in the district court a report of his findings and recommendations for disposition, in accordance with Section 636(b)(1)(C) of the Act.[4] These findings and recommendations carried only such weight as their merit commanded and the sound discretion of the judge warranted. Mathews v. Weber, 423 U.S. 261, 275, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976).
 
 
 23
 Under Section 636(b)(1)(C), the district court is required to conduct a De novo determination where objections to the magistrate's report have been filed by the parties with the district court. Although neither party objected to the magistrate's report in the instant case, the district court nevertheless conducted a De novo review of the proceedings. We regard such review as a sound exercise of judicial discretion consistent with the congressional policy underlying the purposes of the Magistrates Act. As the court observed in Sick v. City of Buffalo, N.Y., 574 F.2d 689 (2d Cir. 1978):
 
 
 24
 "District court review after a trial before a magistrate or master is not a meaningless exercise. Rather, the procedure comports with the fundamental congressional policy underlying the Magistrates Act to Aid the courts in their ultimate decisionmaking function. Subjecting the acts of magistrates and masters to district court scrutiny also avoids possible constitutional infirmities. In addition, such review permits correction of possible error at the earliest time. Thus, an improper verdict may be detected and corrected before appeal. Similarly, an erroneous charge to the jury or an incorrect ruling of law by the magistrate or master can be rectified by ordering a new trial. Finally, not only will review at the district court level often save parties the expense and difficulty of appeal, but it will also give the appellate court the benefit of the district court's reasoned consideration."
 
 
 25
 574 F.2d at 692-693 (emphasis in the original) (footnotes omitted).
 
 
 26
 Finally, the reference procedure utilized in this case satisfied the jurisdictional requirement of a final judgment rendered by an article III court. Taylor v. Oxford, 575 F.2d 152 (7th Cir. 1978); United States v. Reeds, 552 F.2d 170 (1977); Sick v. City of Buffalo, N.Y., 574 F.2d 689 (1978). In the case at bar, the district court, upon De novo review of the findings and recommendations submitted by the magistrate, affirmed the verdicts reached by the magistrate and the jury, and ordered the entry of final judgment in favor of the defendants-appellees.
 
 
 27
 Accordingly, we hold that, pursuant to an order of the district court, a consensual reference to a United States Magistrate for purposes of conducting a civil trial is proper, where the district court reviews De novo the proceedings held before the magistrate, the findings and recommendations of the magistrate filed with the court, and the objections, if any, of the parties filed thereto, and where the district court directs the entry of a final judgment supported by the evidence adduced at trial and the law applicable thereto. Under the facts presented in this appeal, we find the procedure utilized by the district court satisfied this standard.
 
 III
 
 28
 Appellant also appeals from the order of the district court denying her motion for a new trial, contending she was deprived of a fair trial by the cumulative effect upon the jurors of erroneously admitted evidence and improper argument by defense counsel. Having examined the record, we find the arguments advanced in support of these contentions to be without merit. We therefore conclude the district court did not abuse its discretion in denying appellant's motion for a new trial.
 
 
 29
 For the foregoing reasons, the judgment appealed from is affirmed, and the Clerk of this Court is directed to enter judgment accordingly.
 
 
 30
 AFFIRMED.
 
 
 31
 SWYGERT, Circuit Judge, dissenting.
 
 
 32
 I dissent from the majority's affirmance of the district court's order granting judgment after a jury trial presided over by a magistrate. I do so because I do not believe that Congress in the Magistrates Act intended to empower magistrates to assume an adjudicatory function otherwise performed in our Nation only by an Article III judge, and that therefore jurisdiction is lacking. Recognizing that both parties in this civil action consented to a full trial before a magistrate, I note that the parties cannot themselves confer subject matter jurisdiction. Moreover, I have serious doubts about the constitutionality of allowing someone other than an Article III judge to perform a function as traditionally adjudicatory as that of presiding over a full civil trial.
 
 
 33
 It is important initially to recognize what this case is not. It is not a situation where private parties have agreed between themselves to submit their differences to a private dispute resolution process such as arbitration. Nor is it a case where a party seeks federal court enforcement of the outcome of a private dispute arbitration. It is not even a case where certain matters have been separated out of a federal court action for initial reference to a specialized factfinder, as in the case of reference to a special master. Rather, this is a case where an officer other than a constitutional judge performed one of the most traditional of judicial functions, that of presiding over a trial (with a jury) on the merits, not in a private capacity or as part of an isolated segment of an action but fully under the aegis of the formal judicial power of the United States as defined in Article III of the Constitution.
 
 
 34
 It is true that plaintiff's complaints on appeal challenging the adjudicatory procedure here employed do not lie well with her, inasmuch as she originally consented to the reference to the magistrate. But it is equally true, indeed it is axiomatic, that parties cannot themselves confer subject matter jurisdiction. See, e. g., Mitchell v. Maurer, 293 U.S. 237, 244, 55 S.Ct. 162, 79 L.Ed. 338 (1934); C. Wright, Federal Courts, 17 (3d ed. 1976). Thus, we must look to see if Congress in enacting the Magistrates Act conferred upon United States Magistrates the power to accept jurisdiction and preside over full civil trials.
 
 
 35
 Perhaps the most thorough analysis of the legislative history of the Magistrates Act prior to its amendments in 1976 was undertaken by Judge Sprecher in his opinion for this court in T.P.O., Inc. v. McMillen, 460 F.2d 348 (7th Cir. 1972). His analysis disclosed an evident concern on the part of Congress not to attempt to devolve upon magistrates responsibilities which were constitutionally judicial in nature.[1] The Senate Committee on the Judiciary, for example, evidenced a concern over " 'potential abuses of the assignment power by individual judges who, in misguided attempts to expedite the business before them, might unwittingly delegate to magistrates responsibilities that are more properly discharged by the judge.' " S.Rep. No. 371, 90th Cong., 1st Sess. 25-27, As quoted in T.P.O., Inc. v. McMillen, supra, 460 F.2d at 357. The Judiciary Committee also recognized " 'that any additional duty assigned to (a) magistrate must be within the bounds of what may be constitutionally performed by a non-article III judicial officer.' " Id. Where Congress even arguably encroached upon the judicial sphere of Article III, it bestowed jurisdiction narrowly and specifically, as in the allowance of trial of minor criminal offenses before magistrates. There is no indication that the Congress, by allowing experimentation through appointment of magistrates to such additional duties as are not inconsistent with the Constitution and laws of the United States, intended such a drastic expansion of jurisdiction as would allow a magistrate to sit in place of a judge presiding over a full trial on the merits.
 
 
 36
 The current version of the Magistrates Act, on which the majority relies, came into existence as the result of amendments passed by Congress in 1976. As was the case with the earlier version of the Act, no explicit language authorizes a magistrate to preside over full civil trials on the merits. The majority nonetheless finds support for this judicial devolution of jurisdiction in section 636(b)(3) of the Act, which allows assignment of "such additional duties as are not inconsistent with the Constitution and laws of the United States." I believe it is apparent from the legislative history, however, that Congress contemplated these additional duties to be rather administrative in nature[2] and never considered the possibility that this section would be read as authorizing a magistrate to do all but enter final judgment in a federal civil trial.
 
 
 37
 To begin with, the purpose of the amendments to the bill was to clarify and define the additional duties assignable to a magistrate in the discretion of a district court judge. "These additional duties generally relate to the hearing of motions in both criminal and civil cases, including both preliminary procedural motions and certain dispositive motions." H.Rep. No. 94-1609, 94th Cong., 2d Sess. 2, Reprinted in (1976) U.S.Code Cong. & Admin.News, pp. 6162, 6162 ("H.R.Rep. No. 94-1609").
 
 
 38
 Far from expecting either the original Act or its amended version to allow district courts to let magistrates preside at civil trials, it is plain that Congress thought passage of the Act would help free the district court judge from other duties so that he might perform that very function:
 
 
 39
 It seems to the committee that in 1968 the Congress clearly indicated its intent that the magistrate should be a judicial officer whose purpose was to assist the district judge to the end that the district judge could have more time to preside at the trial of cases having been relieved of part of his duties which required the judge to personally hear each and every pretrial motion or proceeding necessary to prepare a case for trial.
 
 
 40
 H.R.Rep. No. 94-1609, 6, U.S.Code Cong. & Admin.News 1976, p. 6166. In fact, time and again the House Report accompanying the bill refers to this purpose:
 
 
 41
 Rather than constituting "an abdication of the judicial function", it seems to the committee that the use of a magistrate under the provisions of S. 1283, as amended, will further the congressional intent that the magistrate assist the district judge in a variety of pretrial and preliminary matters thereby facilitating the ultimate and final exercise of the adjudicatory function at the trial of the case.
 
 
 42
 Without the assistance furnished by magistrates in hearing matters of this kind, and others not specifically named, it seems clear to the committee that the judges of the district courts would have to devote a substantial portion of their available time to various procedural steps rather than to the trial itself.
 
 
 43
 H.R.Rep. No. 94-1609, 7, U.S.Code Cong. & Admin.News 1976, p. 6167. See also H.R.Rep. No. 94-1609, 4. Given these expressions of intention, I believe that interpreting the additional duties clause as intended to allow magistrates to try cases actually frustrates the manifest intent of Congress rather than furthering it. It being Congress' manifest intent to have district court judges preside at the trial on the merits of district court cases, it is not for courts to alter this congressional allocation of subject matter jurisdiction.
 
 
 44
 Going beyond their finding that the Magistrates Act allows the devolution of jurisdiction which has here occurred, my colleagues take solace in the view that Article III constitutional concerns are unfounded in the present case, inasmuch as the district court retained its judicial power by completing a De novo review of matters originally passed on by the magistrate before entering final judgment thereon. But this allegedly De novo review actually amounted to little more than an appellate-type check for gross errors.
 
 
 45
 In T.P.O., Inc. v. McMillen, supra, Judge Sprecher found it appropriate to quote remarks of the late Chief Judge Theodore Levin of the Eastern District of Michigan made in connection with Senate hearings on expanding the jurisdiction of magistrates. Chief Judge Levin spoke about recommendations made to judges by special masters, stating that when a master is appointed, " 'you do not get the judge, you get the judicial determination of the master. . . . I practiced before masters in the Federal court system, and I found to my great disappointment that I received the judgment of the master.' " Proposed Federal Magistrates Act of 1966, Hearings on S. 3475 Before the Subcomm. on Improvements in Judicial Machinery of the Senate Comm. on the Judiciary, 89th Cong., 2d Sess. 68-69 (1966), As quoted in T.P.O., Inc. v. McMillen, supra, 460 F.2d at 356 n. 50. The truth of these remarks is borne out here. As described in his own order of June 15, 1978, the district judge merely reviewed the record to determine if the magistrate's orders were "supported by the evidence and the law applicable thereto." This is not an independent weighing of each situation as it existed at the time prior to a given ruling (such as the admissibility of proffered evidence) with an independent judgment reached and then matched against that made by the magistrate. That would be De novo. This is instead merely a review to see if there is evidence to support a given conclusion. This is not unlike the "substantial evidence" review given to agency determinations. It is not an exercise of De novo decision making. The district court judge did not exercise that power. He, in fact, devolved it upon the magistrate and retained merely the power to conduct an administrative, appellate review in its broadest sense.
 
 
 46
 And in allowing a magistrate to preside over a full jury trial on the merits, it could scarcely be otherwise. The jury is factfinder in a federal trial of this sort, and its verdict once reached is not lightly set aside. But that verdict is shaped by what takes place before it, and those events are in significant part controlled by the rulings of the magistrate. Thus, unless the district court judge wishes to upset the jury verdict, he cannot substitute his judgment at a later date for that rendered by the magistrate during trial. He will, of course, be reluctant to do so, and instead will at most check to see if any of the magistrate's trial rulings are arguably supportable. Having assigned the entire trial to the magistrate, he will be reluctant to take it back to do all over again. The situation is thus hardly conducive to the sort of De novo review my Brothers find to be the saving feature in what appears to me to be an abdication of the judicial function.
 
 
 47
 Because I do not find any intent on the part of Congress to allow district court judges to abdicate the bench in favor of magistrates in terms of presiding over civil jury trials, I would vacate the judgment in this case and remand it to the district court. Thus, I would not reach the Article III concerns implicated by this practice, and accordingly I will not further lengthen this dissent with my views on them. I would state, however, that I have serious doubts as to the constitutionality of allowing a non-Article III official to perform a traditional, judicial function so central to the exercise of the judicial power of the United States as that of presiding over a federal civil jury trial.
 
 
 
 [1]
 Section 636(b)(3) of the Magistrates Act provides:
 "A magistrate may be assigned such additional duties as are not inconsistent with the Constitution and laws of the United States."
 28 U.S.C. § 636(b)(3).
 
 
 [2]
 Section 636(b)(4) of the Act provides:
 "Each district court shall establish rules pursuant to which the magistrates shall discharge their duties."
 28 U.S.C. § 636(b)(4).
 
 
 [3]
 Rule 38(b)(5)(c) of the District Court for the Eastern District of Illinois provides, in pertinent part:
 "In addition to the other powers expressly provided by Rule 38(b), the Magistrate shall have the authority to:
 (c) With the written consent of the parties, hear and determine all motions, conduct the trial, enter findings of fact and conclusions of law and final judgments in civil cases."
 
 
 [4]
 Section 636(b)(1)(C) of the Magistrates Act provides:
 "(T)he magistrate shall file his proposed findings and recommendations under subparagraph (B) with the court and a copy shall forthwith be mailed to all parties.
 Within ten days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate. The judge may also receive further evidence or recommit the matter to the magistrate with instructions."
 28 U.S.C. § 636(b)(1)(C).
 
 
 [1]
 The Supreme Court in Mathews v. Weber, 423 U.S. 261, 269, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976), also noted this congressional concern, as well as that of the Director of the Administrative Office of the United States Courts and representatives of the Department of Justice. In Mathews, however, the Court was not required to pass on the constitutional questions. Id. at n. 5
 
 
 [2]
 See Taylor v. Oxford, 575 F.2d 152, 154 (7th Cir. 1978) (footnote omitted):
 Section 636(b)(3) permits the assignment of additional duties to a magistrate not inconsistent with the Constitution and laws of the United States. It was anticipated that this subsection would permit innovative experimentation by the courts. However, the examples given in the legislative history, such as review of default judgments and acceptance of returns of jury verdicts if the judge is unavailable, together with other administrative type functions, such as the appointment of attorneys in criminal cases, strongly suggests the statute's intended limitations. Innovative experiments may be admirable, and considering the heavy case loads in the district courts, understandable, but experiments must stay within the limitations of the statute.