OPINION OF THE COURT
 

 WEIS, Circuit Judge.
 

 This appeal is from a judgment entered by a magistrate after a bench trial. The parties had consented to trial and entry of judgment in accordance with 1979 amendments to Federal Magistrates Act. We conclude that this procedure does not violate Article III of the United States Constitution and, on the merits, we affirm.
 

 Plaintiff brought suit against the United States under the Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680 (1976 & Supp. V 1981), seeking compensation for personal injuries allegedly received in an automobile collision with a Postal Service vehicle. With the parties’ consent, the case was tried before a federal magistrate, who found for plaintiff and entered a judgment of $7,500 in her favor. Plaintiff appealed directly to this court.
 

 Within the space of five months, plaintiff was injured in two automobile accidents. The first, occurring on May 27, 1977, was a minor collision between the plaintiff’s station wagon and the post office jeep. The testimony established that both vehicles were moving slowly, and plaintiff was not thrown against any part of the car’s interi- or. In October 1977, plaintiff was again injured in a chain-reaction accident involving four cars.
 

 The United States did not seriously contest liability for the May collision, but contended that the more serious October accident caused most of the plaintiff’s injuries. The magistrate found that plaintiff failed to prove that any injuries manifested after October 7,1977 were causally related to the collision with the postal vehicle. For damages arising out of the May 7 accident, he determined that $7,500 represented fair and reasonable compensation.
 

 
 *924
 
 On appeal, plaintiff contends that the magistrate’s findings of fact were clearly erroneous and that the award was inadequate. The appeal, however, presents two preliminary issues touching on jurisdiction.
 

 I
 

 The first question is whether this court has been presented with an appealable order. Section 636(c)(3) of the Federal Magistrates Act, 28 U.S.C. § 636(c)(3) (1976 ed., Supp. V), permits an appeal directly to this court from a judgment entered by a magistrate in a case tried by consent. Section 636(c)(4) allows an alternative procedure by which, at the time of reference to the magistrate, the parties may agree to take any appeal to a district judge. Thereafter, the court of appeals may review the case only upon its grant of a petition for leave to appeal.
 
 Id.
 
 § 636(c)(5).
 

 When the parties consented to have this case tried by a magistrate, they signed a form prepared by the clerk for the District of New Jersey. In addition to the reference to the magistrate, the form contained a separate provision allowing the parties to agree that any appeal would be to a judge of the district court.
 
 [1]
 
 Although counsel for the parties signed both portions of the form, the appeal from the magistrate’s judgment was taken directly to this court.
 

 Under ordinary circumstances, a case appealed directly to this court, when the parties had agreed to initial review by a district judge, would be remanded for that disposition. In the matter at hand, however, counsel for both parties represent that they had not intended to appeal to the district judge and erroneously signed the consent to that procedure. Because the procedure is of recent origin and not yet well known to the bar, we will grant the parties’ request to set aside the consent to appeal to the district judge. We caution, however, that in the future we will hold counsel to such agreements and our ruling on the point will not serve as precedent for similar leniency in subsequent cases.
 

 II
 

 The second preliminary matter is of more substance. The issue is whether section 636(c) violates Article III of the Constitution
 
 [2]
 
 by authorizing a magistrate, on consent of the parties, to conduct trials and enter judgments.
 
 [3]
 
 A panel of the United States Court of Appeals for the Ninth Circuit held that section 636(c) is unconstitutional.
 
 Pacemaker Diagnostic Clinic, Inc. v. Instromedix, Inc.,
 
 712 F.2d 1305 (9th Cir.1983), rehearing en banc granted 718 F.2d 971 (9th Cir.1983). In reaching that conclu
 
 *925
 
 sion, the panel relied on the Supreme Court’s decision in
 
 Northern Pipeline Construction Co. v. Marathon Pipeline Co.,
 
 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). Since the
 
 Pacemaker
 
 court characterizes the issue as one of jurisdiction, we raise the question
 
 sua sponte
 
 in the appeal at hand.
 

 In
 
 Northern Pipeline,
 
 the Supreme Court held that in purporting to confer jurisdiction on bankruptcy judges to decide common law cases without the consent of the parties, the Bankruptcy Reform Act of 1978 violated Article III of the Constitution. The Court concluded that the Act “imper-missibly removed most, if not all, of ‘the essential attributes of the judicial power’ from the Art. Ill district court, and vested those attributes in a non-Art. Ill adjunct.” 458 U.S. at 50, 102 S.Ct. at 2880. The Court in particular noted that the constitutional protections provided by Article Ill’s guarantee of life tenure and nondiminishable salary were not available to bankruptcy judges. Moreover, the Reform Act established a court, though labeled as an “adjunct”, that was separate and apart from the district court.
 
 Id.
 

 The rationale of
 
 Northern Pipeline
 
 led the
 
 Pacemaker
 
 panel to conclude that section 636(c) of the Magistrates Act likewise ran afoul of Article III. Magistrates are appointed for eight-year terms, 28 U.S.C. § 631(c) (1976), may not serve beyond the age of 70 except with the approval of all the judges of the appointing court,
 
 id.
 
 § 631(d), may be removed for specified cause by the appointing court,
 
 id.
 
 § 631(a) (1976 ed., Supp. V 1981), and enjoy only limited salary protection, see
 
 id.
 
 § 634 (1976 & Supp. V 1981).
 
 [4]
 
 Thus, the office of magistrate does not enjoy Article III tenure and salary protections. The panel concluded that this disability was not cured by construing the magistrate’s power to enter a judgment under section 636(c) as the exercise of an adjunct function of the district court. 712 F.2d at 1309-10.
 

 Concluding that “litigants cannot waive the jurisdictional requirement of an Article III court,” the
 
 Pacemaker
 
 panel also rejected the proposition that the consent requirement of section 636(c) could cure the constitutional problem.
 
 Id.
 
 at 1312. The reason advanced was that “Article III addresses institutional concerns of our system of government that due process addresses only incidentally.”
 
 Id.
 

 [5]
 

 The panel also turned aside the argument that the magistrate system simply involved delegation of power within the district court and thus presented no separation of powers problem.
 
 Id.
 
 at 1312-13.
 

 The
 
 Pacemaker
 
 opinion is a thorough and thoughtful one, but it rests almost entirely on
 
 Northern Pipeline,
 
 which addressed the Article III issue only with respect to bankruptcy judges. However, the authority granted those judges under the Reform Act, as well as the conditions under which they exercise the power of their office, differs significantly from the provisions applicable to magistrates. The most important variance is that the litigants’ consent is required before a magistrate may act under section 636(c).
 
 [6]
 
 No such limitation applied
 
 *926
 
 to bankruptcy judges under section 241(a) of the Reform Act, 28 U.S.C. § 1471.
 

 Northern Pipeline
 
 did not produce a majority opinion. Justice Brennan wrote for a plurality of four and Justice Rehnquist concurred in an opinion which Justice O’Connor joined. The concurrence articulated a narrower basis for decision than the plurality opinion and thus sets forth the holding agreed on by a majority of the Court. As summarized by the Chief Justice, the holding was “limited to the proposition ... that a ‘traditional’ state common-law action, not made subject to a federal rule of decision, and related only peripherally to an adjudication of bankruptcy under federal law, must,
 
 absent the consent of the litigants,
 
 be heard by an ‘Article III court’ if it is to be heard by any court or agency of the United States.” 458 U.S. at 92, 102 S.Ct. at 2882 (Burger, C.J., dissenting) (emphasis added). The lack of consent by the litigants is thus a critical element of
 
 Northern Pipeline,
 
 but in the case at hand there is consent — un-coerced and submitted pursuant to statutory safeguards.
 
 [7]
 

 As
 
 Pacemaker
 
 pointed out, jurisdiction in the usual sense may not be conferred by consent. The limits on the district court’s subject matter jurisdiction, as set by the Constitution or by statute, may not be waived by agreement of the parties.
 
 See, e.g., American Fire & Casualty Co. v. Finn,
 
 341 U.S. 6, 17-18, 71 S.Ct. 534, 541-542, 95 L.Ed. 702 (1951);
 
 Ahrens v. Clark,
 
 335 U.S. 188, 193, 68 S.Ct. 1443, 1445, 92 L.Ed. 1898 (1948);
 
 United States v. Griffin,
 
 303 U.S. 226, 229, 58 S.Ct. 601, 602, 82 L.Ed. 764 (1938). In this case, however, jurisdiction was given to the district court by Congress,
 
 see
 
 28 U.S.C. § 1346(b) — the consent of the litigants had no part in that process. The judgment in this Tort Claims Act case is that of the district court, the forum specified by the statute.
 

 The parties’ consent went not to the jurisdiction of the district court as an entity, but to the judicial officer within the court who conducted the trial. Waiver of a particular mode of trial or factfinder is not unknown. For example, Fed.R.Civ.P. 38(d) provides for an automatic waiver of a jury trial if no timely request is made. By the same rule, a demand for jury trial may be withdrawn on the consent of the parties. Under Rule 39(c), the district judge may, with consent of the parties, order a jury trial when it is not otherwise triable of right. To that extent there is long-standing recognition of the right of the parties to consent to a specific form of trial within the district court.
 

 The relationship between the judicial officer conducting the trial and the district court points out another difference between
 
 Northern Pipeline
 
 and the case at hand. The Supreme Court recognized that although the Reform Act described the bankruptcy court as an adjunct of the district court, they were to a large extent independent of each other. Thus, unlike referees under the old Bankruptcy Act, who were “subordinate adjuncts of the district courts,”
 
 see
 
 458 U.S. at 80 n. 31, 102 S.Ct. at 2876 n. 31, the bankruptcy judges are independent of the district court. Rather than being appointed by district judges, bank
 
 *927
 
 ruptcy judges under the new Act would be appointed by the President with the advice and consent of the Senate. 28 U.S.C. § 152 (1976 ed., Supp. V 1981). Bankruptcy judges may be removed only by the Circuit Council for cause.
 
 Id.
 
 § 153(b).
 

 Under the Reform Act, cases were not referred to the bankruptcy court by the district court but went there directly by filing with the bankruptcy court’s own clerk. The district court could not terminate references to the bankruptcy court. In short, the bankruptcy courts operated, not under the direction of the district court, but in their own separate sphere and with their own independently appointed personnel.
 

 In contrast, the magistrate is truly a part of the district court, appointed by its judges, 28 U.S.C. § 631(a) (1976 ed., Supp. V 1981), and subject to dismissal by them,
 
 id.
 
 § 631(i). A magistrate may not conduct any proceeding in a civil matter unless “specifically designated to exercise such jurisdiction by the district court or courts he serves.”
 
 Id.
 
 § 636(c)(1). Even consensual reference of a case to a magistrate may be vacated by a district judge, either sua
 
 sponte
 
 or in some circumstances on motion of the parties.
 
 Id.
 
 § 636(c)(6). As with matters handled by district judges, the clerk of the district court manages the records in cases referred to the magistrate. Thus, the magistrate does not function independently of the district court, but as an integral part of it.
 

 One of the underlying bases for establishment of Article III courts mentioned in the
 
 Northern Pipeline
 
 plurality opinion is the necessity of independence from the legislative and executive branches of government. This separation of powers concept is not violated in the magistrate system. Those officers are not subjected to pressures from the legislature. Indeed, as Justice Black-mun wrote in
 
 Raddatz v. United States,
 
 447 U.S. 667, 685, 100 S.Ct. 2406, 2417, 65 L.Ed.2d 424 (1980) (concurring opinion), “The only conceivable danger of a ‘threat’ to the ‘independence’ of the magistrate comes from within, rather than without the judicial department.”
 
 See also Northern Pipeline,
 
 458 U.S. at 79 n. 30, 102 S.Ct. at 2875 n. 30.
 

 The possibility that the magistrates might be subjected to influence from Article III judges should not invalidate the reference procedure. The independence of the magistrate from outside influences is enhanced rather than frustrated by such a relationship.
 
 [8]
 
 It is difficult to understand the concern of the
 
 Pacemaker
 
 panel that magistrates might be deterred from making decisions that would conflict with the policy of the district court. When the magistrate is assigned cases for hearing and recommendation, his work must be reviewed and approved by the district judge before becoming final.
 
 See
 
 28 U.S.C. § 636(b). That certainly represents the ultimate in influencing the decision. Yet, the Supreme Court found such procedures to be constitutional and voiced no concern about the magistrate’s lack of independence from district judges.
 
 United States v. Raddatz,
 
 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980).
 

 Under section 636(c), the magistrate enters the judgment rather than submitting the case to a district judge for review and entry. In
 
 Raddatz,
 
 the Court emphasized that delegation to a non-Article III judicial officer is permissible “so long as the ultimate decision is made by the district court.”
 
 Id.
 
 at 683, 100 S.Ct. at 2416. Similarly, in
 
 Mathews v. Weber,
 
 423 U.S. 261, 271, 96 S.Ct. 549, 554, 46 L.Ed.2d 483 (1976), the Court upheld a reference to a magistrate because “[t]he authority — and the responsi
 
 *928
 
 bility — -to make an informed, final determination ... remained] with the district judge.” Justice Brennan wrote in
 
 Northern Pipeline
 
 that “[cjritical to the Court’s decision to uphold the Magistrates Act [in
 
 Rad-datstj
 
 was the fact that the ultimate decision was made by the district court.” 458 U.S. at 83, 102 S.Ct. at 2877. It must be noted, however, that in each of these cases, the reference to a non-Article III officer was non-consensual.
 

 In
 
 Raddatz,
 
 a criminal defendant’s motion to suppress evidence was referred to a magistrate over the defendant’s objections. 447 U.S. at 669, 100 S.Ct. at 2409. In
 
 Weber,
 
 a standing order of a district court “require[d] initial reference to a magistrate” in all Social Security benefit cases. 423 U.S. at 264, 96 S.Ct. at 551. In
 
 Northern Pipeline,
 
 Congress itself had delegated case dispositive authority to the bankruptcy courts. Thus, although all three Supreme Court decisions emphasized that final decision-making authority rests in an Article III court, they did so in circumstances where the non-Article III officer was forced on the parties.
 
 Weber, . Raddatz,
 
 and
 
 Northern Pipeline
 
 can be read as establishing that the decision making power must remain in the Article III district court when the parties have not consented to a determination by a non-Article III office. The cases do not provide a determinative principle in instances of consensual reference.
 
 [9]
 

 Moreover, these decisions can be contrasted with other, albeit older, Supreme Court decisions. In
 
 Kimberly v. Arms,
 
 129 U.S. 512, 9 S.Ct. 355, 32 L.Ed. 764 (1889), the parties consented to the appointment of a special master “to hear the evidence and decide all the issues between” them.
 
 Id.
 
 at 516, 9 S.Ct. at 356. In concluding that the court had erred in failing to treat the master’s findings of fact and law as presumptively correct, the Court noted that “[i]t [was] not within the general province of a master to pass upon all issues.”
 
 Id.
 
 at 524, 9 S.Ct. at 359. However, “when the parties consent to the reference of a case to a master or other officer to hear and decide all the issues .. ., the master is clothed with very different powers from those which he exercises upon ordinary references, without such consent.”
 
 Id.
 

 Kimberly
 
 recognizes, then, that the consent of the parties can robe a non-Article III officer with decision making authority.
 
 See also id.
 
 at 525, 9 S.Ct. at 359 (“By the consent ... it was intended that the master should exercise power beyond that of a reporter of testimony.”); Silberman, “Masters and Magistrates Part II: The American Analogue,” 50 N.Y.U.L.REV. 1297, 1351-52 and n. 322 (1975).
 

 A consensual reference was given an even more pervasive effect in
 
 Heckers v. Fowler,
 
 69 U.S. (2 Wall.) 123, 17 L.Ed. 759 (1864). There, the parties agreed to refer the case to a referee and further agreed “that the report of the referee have the same force and effect as a judgment of the court.” The trial court ordered that “on filing the report of the said referee with the clerk of the court, judgment be entered in conformity therewith the same as if said cause had been heard before the court.”
 
 Id.
 
 69 U.S. (2 Wall.) at 127. The Supreme Court held the reference valid because it “does not directly involve the question of jurisdiction, but has respect to the mode of trial as substituting the report of the referee for the verdict of the jury.... Practice of referring pending actions is coeval with the organization of our judicial system.”
 
 Id.
 
 69 U.S. (2 Wall.) at 128.
 

 Pacemaker
 
 declines to attribute significance to
 
 Heckers,
 
 stating that “the opinion makes clear that the court must review the
 
 *929
 
 report and decide whether or not to accept it.” 712 F.2d at 1311 n. 12. Although
 
 Heckers
 
 does state that “[judgment .. . cannot
 
 in general
 
 be entered in conformity to the report or award until it is accepted or confirmed by the court,” 69 U.S. (2 Wall.) at 133 (emphasis added), the Supreme Court proceeded from this general rule to say that the “[p]resent case, however, must be determined upon the peculiar circumstances disclosed in the record,”
 
 id.
 

 The circumstances in
 
 Heckers
 
 were that the parties had agreed that the referee’s report was to have the same force and effect as a judgment of the court, the losing party had made no objections to the report, and the clerk of the court had entered the judgment as agreed to by the parties. Thus, the very point of
 
 Heckers
 
 is that, because of the agreement of the parties, the judgment was valid even though an Article III judge did
 
 not
 
 review and accept the report.
 

 In an earlier case,
 
 Alexandria Canal Co. v. Swann,
 
 46 U.S. (5 Howard) 83, 88, 12 L.Ed. 60 (1847), the Court said that “a trial by arbitrators, appointed by the court with the consent of both parties, is one of the modes of prosecuting a suit to judgment as well established and as fully warranted by law as a trial by jury.” In that case, it appears that an arbitrator’s award automatically became a final judgment when no objections were filed.
 

 Several courts of appeals upheld consensual references to magistrates for a trial on the merits before the 1979 amendments to the Magistrates Act.
 
 See Calderon v. Waco Lighthouse for the Blind,
 
 630 F.2d 352 (5th Cir.1980);
 
 Muhich v. Allen,
 
 603 F.2d 1247 (7th Cir.1979);
 
 DeCosta v. Columbia Broadcasting System, Inc.,
 
 520 F.2d 499 (1st Cir.1975);
 
 see also Banks v. United States,
 
 614 F.2d 95, 97 (6th Cir.1980) (“absent consent, the magistrate cannot conduct the trial itself”). They did so under section 636(b) of the Magistrates Act, which provides that “[a] magistrate may be assigned such additional duties as are not inconsistent with the Constitution and laws of the United States.” 28 U.S.C. § 636(b)(3).
 
 [10]
 

 The concept of a decision becoming final and binding without Article III implementation is not unknown even in non-consensual situations. For example, orders of some administrative agencies, such as the Federal Trade Commission and the Interstate Commerce Commission, become enforceable without judicial action if there is no appeal to an Article III court.
 
 See
 
 15 U.S.C. § 45(g); 49 U.S.C. § 10322(e).
 
 See also Redish, Legislative Courts, Administrative Agencies and the Northern Pipeline Decision,
 
 1983 DUKE L.J. 197, 217 (1983). In addition, when a district court refers a matter to a master under Fed.R.Civ.P. 53, the parties can stipulate that the master’s findings of fact shall be final. If they do so, “only questions of law arising upon the [master’s] report shall thereafter be considered.” Fed.R.Civ.P. 53(e)(4).
 

 We are convinced that the requirement of consent and the power of the district judge to vacate the reference to a magistrate are substantial factors which make both
 
 Northern Pipeline
 
 and the
 
 Raddatz
 
 language inapplicable here.
 

 In sum, section 636(c) does not violate Article III because:
 

 
 *930
 
 1. The reference to a magistrate is consensual;
 

 2. The district judge has the power to vacate the reference;
 

 3. The magistrate is appointed by;: the district judges, is a part of the district court, and is specially designated to try cases;
 

 4. The parties have a right of appeal to a district judge or the court of appeals.
 
 [11]
 

 We decline to follow the
 
 Pacemaker
 
 panel decision because it reads too much into
 
 Northern Pipeline.
 
 The distinctions between the magistrate system incorporated into the district court and the independent bankruptcy courts are such that
 
 Northern Pipeline’s
 
 ban against non-Article III tribunals in private rights cases does not apply here.
 

 The government has suggested an alternative and narrower base for affirmance in this case, relying upon the public and private rights dichotomy discussed in
 
 Northern Pipeline. See
 
 458 U.S. at 69-71, 102 S.Ct. at 2870-71. The Supreme Court in general endorsed the concept that in surrendering sovereign immunity the government may choose to relegate adjudication of a claim, at least preliminarily, to an administrative agency or Article I court. The government therefore argues that a Tort Claims Act case need not be decided initially by an Article III court. We choose not to address that argument but rather decide the issue on the broader basis we have discussed earlier. We do so because in a companion case before this court,
 
 Williams v. Mussomelli,
 
 No. 83-5035, the public rights exception would not apply.
 

 We do not deny that there may be basis for concern about the wisdom of large scale delegation of adjudication to magistrates. Wholesale reference of cases even by consent does pose dangers to the district courts as now organized. As the practice continues and becomes more wide spread, it will tend to become routine. Pressure will naturally follow to increase the number of magistrates rather than encounter the slow and often frustrating process of securing congressional action to add the needed numbers of district judgeships, as well as the more probing inquiries by the attorney general and in the Senate confirmation and approval of nominees for federal district judgeships.
 

 Overworked district judges are unlikely to oppose the addition of more magistrates and may in fact initiate such requests. The possibility of large scale dilutions of district courts to the point where magistrates would outnumber district judges is not inconceivable. Whether such a rearrangement of the federal system is desirable is, to say the least, highly debatable.
 
 [12]
 

 II
 

 Having concluded that the magistrate could properly enter judgment, we now address the merits. Little discussion is warranted. The issues were purely factual and concerned with the causal relationship between the two automobile collisions and the plaintiffs injuries. The resolution of those matters depended to a large extent upon judgments of credibility and weight of the evidence. The scope of review is whether the factual findings are clearly erroneous. The findings are amply supported by the evidence, and the legal conclusions flowing from them are not erroneous.
 

 
 *931
 
 Accordingly, the judgment of the district court will be affirmed.
 

 [1]
 

 . The form, titled “CONSENT TO PROCEED BEFORE A UNITED STATES MAGISTRATE,” contained the following two provisions:
 

 “In accordance with the provisions of 28 U.S.C. § 636(c), the parties to the above captioned civil matter hereby waive their right to proceed before a Judge of the United States District Court and consent to have a United States Magistrate conduct any and all further proceedings in the case (including the trial) and order the entry of judgment.
 

 sfc ‡ ‡ s}s sjs
 

 Any appeal shall be taken to the United States Court of Appeals for this judicial circuit, in accordance with 28 U.S.C. § 636(c)(3), unless all parties further consent, by signing below, to take any appeal to the judge of the District Court, in accordance with 28 U.S.C. § 636(c)(4).”
 

 Each provision was separately signed by counsel for plaintiff and an Assistant United States Attorney on behalf of the United States.
 

 [2]
 

 . Section 1 of Article III provides:
 

 “The - judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish. The Judges, both of the supreme and inferior Courts, shall hold their Offices during good Behavior, and shall, at stated Times, receive for their Services, a Compensation, which shall not be diminished during their Continuance in Office.”
 

 [3]
 

 .Section 636(c)(1), which was added by the Act of Oct. 10, 1979, P.L. 96-82, § 2, 93 Stat. 643, provides in part:
 

 “(c) Notwithstanding any provision of law to the contrary—
 

 (1) Upon the consent of the parties, a ... United States Magistrate ... may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case, when specially designated to exercise such jurisdiction by the district court
 

 [[Image here]]
 

 28 U.S.C. § 636(c)(1) (1976 ed., Supp. V 1981).
 

 [4]
 

 . The Magistrates Act provides, as it has since its inception in 1968, see Pub.L. 90-578, title I, § 101, 82 Stat. 1112, that “the salary of a full-time United States magistrate shall not be reduced, during the term in which he is serving, below the salary fixed for him at the beginning of that term.” 28 U.S.C. § 634(b) (1976). This protection against salary reduction is limited because, being statutory, it could be repealed by Congress at any time, and in any event does not prohibit diminution after the expiration of a magistrate’s 8-year term.
 

 [5]
 

 . For a contrary view of Article III in the criminal context, see Comment, “The Federal Magistrates Act — An Exercise in Article III Constitutionality,” 17 WAYNE L.REV. 1483, 1507-08 (1971).
 

 [6]
 

 .Although section 636(c) was added by the 1979 amendments to the Magistrates Act, the provision is not the first time Congress has authorized a non-Article III officer within the judicial system to exercise case dispositive authority on the consent of a party. An act passed in 1940 provided that “any United States commissioner specially designated for that purpose by the court by which he was appointed shall have jurisdiction to try and, if found guilty, to sentence persons charged with petty offenses” committed on federal enclaves. Act of Oct. 9, 1940, ch. 785, 54 Stat. 1058-59.
 

 
 *926
 
 The person charged had to sign a written consent to be tried before the commissioner, and the judgment of the commissioner was appeal-able to the district court. For descriptions of the historical background of the federal magistrate system,
 
 see
 
 McCabe, “The Federal Magistrates Act of 1979,” 16 HARV.J. ON LEGIS. 343 (1979); Spaniol, “The Federal Magistrates -Act: History and Development,” 1974 ARIZ. ST.L.REV. 565 (1974),
 
 reprinted in, Diversity of Citizenship Jurisdiction/Magistrates Reform: Hearings Before the Subcomm. on Courts, Civil Liberties, and the Administration of Justice of the House Comm, on the Judiciary,
 
 95th Cong., 1st Sess., 454 (1977).
 

 [7]
 

 . 28 U.S.C. § 636(c)(2) provides that the clerk of the district court is to “notify the parties of their right to consent to exercise of ... jurisdiction” by a magistrate. Their decision is to be communicated to the clerk and neither the district judge nor the magistrate may attempt to persuade a party to consent to refer the matter to a magistrate. The district court is also directed to adopt local rules and procedures “to protect the voluntariness of the parties’ consent.”
 

 [8]
 

 . Even if it be assumed that the district judge influences the magistrate, this would not amount to non-Article III interference. There is no reason to even speculate that district judges would improperly attempt to influence a magistrate’s decision, but any such conduct would implicate due process, rather than Article III. The same due process considerations would apply if an Article III judge improperly attempted to influence the district judge who was conducting a trial. However, defects in the removal or reappointment process supply no grounds for due process challenges by litigants.
 
 United States v. Canel,
 
 708 F.2d 894, 897 (3d Cir.1983).
 

 [9]
 

 . As the
 
 Pacemaker
 
 panel notes,
 
 Raddatz
 
 declined to consider “whether ... Congress could constitutionally have delegated the task of rendering a final decision ... to a non-Art. III officer.” 447 U.S. at 681, 100 S.Ct. at 2415;
 
 see also Mathews v. Weber,
 
 423 U.S. at 269 and n. 5, 96 S.Ct. at 553 and n. 5.
 
 Pacemaker
 
 states, “We must now address that issue in the present case.” 712 F.2d at 1308. We do not agree that the issue before us is the same one the Court reserved in
 
 Raddatz.
 
 The question in the present case is not whether Congress may constitutionally
 
 delegate
 
 case dispositive authority to a non-Article III officer, but whether the parties may, by consent, have a case tried to judgment before a magistrate.
 

 [10]
 

 . Before 1979, magistrates were not empowered by statute to enter judgments. In addition, the courts of appeals that upheld the consensual references also held that the statute required the district court to make a de novo determination of the magistrates findings to which objection was made.
 
 See Calderon,
 
 630 F.2d at 355 (“The statute requires the district court to make a ‘de novo determination.’ ”);
 
 Muhich,
 
 603 F.2d at 1252 (de novo review is “consistent with the congressional policy underlying the purposes of the Magistrates Act.”);
 
 Hill v. Jenkins,
 
 603 F.2d 1256, 1258 (7th Cir.1979) (de novo review “required by the Act.”).
 
 Cf. DeCosta,
 
 520 F.2d at 508 (finding it “better to rely on the formulation in [Fed.R.Civ.P.] 53(e)(4) — magistrate’s findings of fact are final, but legal rulings have no binding force.)
 

 It is clear that the Magistrates Act no longer requires de novo review of a magistrate’s decision following consensual reference. Thus, we are not faced with the same issue or the same state of the law as was presented in these pre-1979 amendment cases. Nevertheless, the decisions of these courts of appeals do recognize the significance of the parties’ consent.
 

 [11]
 

 . Several commentators have reached the same conclusion. See McCabe, “The Federal Magistrate Act of 1979,” 16 HARV.J. ON LEG-IS. 343, 374-79 (1979); Silberman, “Masters and Magistrates Part II: The American Analogue,” 50 N.Y.U.L.REV. 1297, 1350-54 (1975); Comment, “An Expanding Civil Role for United States Magistrates,” 26 AM.U.L.REV. 66, 74-82 (1976); Comment, “An Adjudicative Role for Federal Magistrates in Civil Cases,” 40 U.CHI. L.REV. 584, 592-94 (1973).
 

 [12]
 

 .
 
 See
 
 Note, “Article III Limits on Article I Courts: The Constitutionality of the Bankruptcy Court and the 1979 Magistrate Act,” 80 COLUM.L.REV. 560, 595 (1980); Note, “Article III Constraints and the Expanding Civil Jurisdiction of Federal Magistrates: A Dissenting View,” 88 YALE L.J. 1023, 1047-1052 (1979).