FEINBERG, Chief Judge:
 

 Defendants William Foreman, Vincent Pilleters and Terry Warden appeal from an order of the United States District Court for the Western District of New York, John T. Curtin, Ch. J., denying their motion under Fed.R.Civ.P. 60(b)(4) to vacate a judgment against them secured by plaintiff-appellee Howard V. Collins. The substantive issues on appeal are whether the provision of the Federal Magistrate Act of 1979, 28 U.S.C. § 636(c), that allows a magistrate to try a civil case and enter a final judgment upon the consent of the parties is constitutional and whether appellants’ consent to such a trial was obtained improperly.
 
 [1]
 
 For reasons given below, we hold that
 
 *110
 
 this provision is constitutional and that appellants’ consent was valid. Accordingly, we affirm the judgment of the district court.
 

 Incredibly, this appeal grows out of an incident that occurred in February 1975 and was the subject of a complaint under 42 U.S.C. § 1983 filed in the district court later that year against the Sheriff of Monroe County and four deputy sheriffs, employed in the Monroe County Jail.
 
 [2]
 
 For the purposes of this appeal it is not necessary to set forth the facts extensively. It is sufficient to say that the complaint alleged that while appellee Collins was a prisoner in the Monroe County Jail he was severely beaten by police officers, in violation of his constitutional and statutory rights. The case languished until November 1981, when it was tried before a magistrate and a jury. The jury awarded Collins $3,000 in compensatory damages and $60,000 in punitive damages.
 

 Pursuant to 28 U.S.C. § 636(c)(4), appellants appealed from the judgment to the district court, which upheld the magistrate’s decision in an opinion filed in April 1983. Appellants then sought leave to appeal to this court, under 28 U.S.C. § 636(c)(5), and in August 1983 we denied leave.
 

 A few days earlier, a panel of the Ninth Circuit had held that section 636(c) was unconstitutional.
 
 Pacemaker Diagnostic Clinic, Inc. v. Instromedix, Inc.,
 
 712 F.2d 1305 (9th Cir.1983), rev’d in banc, 725 F.2d 537 (9th Cir.1984). As a result of this decision, appellants moved in the district court, under Fed.R.Civ.P. 60(b)(4), to vacate the magistrate’s final judgment on the ground that it was “void” because the statute that gave the magistrate jurisdiction was unconstitutional. In November 1983, the district court denied the motion and this expedited appeal followed. The United States has intervened as a party, under 28 U.S.C. § 2403(a), to defend the constitutionality of the challenged provision.
 

 II.
 

 Before addressing the merits of the constitutional argument, we turn to appellants’ claim that the trial by the magistrate was improper in a number of other respects. If that were so, there would be no need to consider the constitutionality of section 636(c). Therefore, under well-recognized authority, we should consider the non-constitutional issues first. See
 
 Ash
 
 
 *111
 

 wander v. TVA,
 
 297 U.S. 288, 347, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936) (Brandéis, J., concurring).
 

 Appellants argue first that there was insufficient compliance with the terms of 28 U.S.C. § 636(c)(2). That section, see note 1, provides that after a district judge has designated a full-time magistrate to conduct civil trials, “the clerk of the court shall, at the time the action is filed, notify the parties of their right to consent to the exercise of such jurisdiction.” Appellants point out that since the action here was commenced in 1975, years before enactment of the section in its present form, the clerk of the court did not send such notice when the action was filed or at any subsequent time. Appellants also stress that the notice to them actually came in 1981 from the magistrate, who called the parties and informed them of his availability and asked if they were willing to have the case tried by him. This was followed up by a letter and a subsequent phone call, after which both parties signed a form entitled “Consent to Proceed Before a United States Magistrate.”
 

 Appellants argue that the two phone calls and the letter constituted inducement or pressure by the magistrate sufficient to render their consent involuntary. The argument is not persuasive. It takes an uncalled-for leap of imagination to characterize the magistrate’s actions as coercion. Similarly without merit is the claim that the notice was defective because it came from the magistrate in 1981 rather than from the clerk in 1975, when the section in question had not yet been enacted. Although the new section applies to proceedings filed before its effective date, cf.
 
 White v. Estelle,
 
 556 F.2d 1366, 1368 (5th Cir.1977), it does not render a proceeding a nullity merely for failure to comply with a technical requirement that was not in existence at the time the section was adopted. Moreover, neither claim now urged by appellants was presented to the magistrate or on direct appeal from his decision to the district court.
 

 III.
 

 We turn now to the merits of the constitutional argument. Here, too, there is a preliminary issue that must be considered. Appellee argues that appellants have waived their constitutional claim because they never raised it until after the magistrate had tried the case and ordered the entry of judgment on the jury verdict; Chief Judge Curtin had considered the appeal to the district court, in which appellants raised numerous other issues, and had affirmed the magistrate; and this court had denied leave to appeal. Appellants claim that their motion is timely under Fed.R.Civ.P. 60(b)(4), which, they argue, allows collateral attack “within a reasonable time” on a civil judgment on the ground that it is “void.” We accept appellants’ contention:
 

 Although the Rule is silent about collateral attack as a method of challenging the validity of a judgment, there can be little doubt that if the judgment is void ... a collateral attack upon the void judgment may be made in any proceeding in any court where the validity of the judgment comes in issue.
 

 7 Moore’s Federal Practice ¶ 60.25[3], at 240 (2d ed. 1983); see
 
 Lubben v. Selective Serv. Sys. Local Bd. No. 27,
 
 453 F.2d 645, 649 (1st Cir.1972);
 
 Graciette v. Star Guidance, Inc.,
 
 66 F.R.D. 424, 426 (S.D.N.Y.1975). In their constitutional challenge, appellants assert that the magistrate lacked subject matter jurisdiction in the underlying ease and that the parties could not consent to give him jurisdiction. Because this kind of jurisdictional claim could arguably render the judgment void, appellants may press their constitutional claim on collateral attack. See
 
 Graciette,
 
 66 F.R.D. at 426; 7 Moore’s Federal Practice 11 60.25[2], at 224.
 

 IV.
 

 Having disposed of these preliminary issues, we proceed to discuss the substance of appellants’ constitutional claim. Appellants specifically attack 28 U.S.C. § 636(c)(1), which authorizes magistrates to
 
 *112
 
 conduct civil trials and enter final judgments pursuant to the consent of the parties and a reference by the district court. This belated claim is admittedly based upon the decision of a panel of the Ninth Circuit in
 
 Pacemaker Diagnostic Clinic, Inc. v. Instromedix, Inc.,
 
 supra.
 

 Subsequent to the panel’s decision in
 
 Pacemaker,
 
 the Third Circuit reached the opposite conclusion — that section 636(c)(1) is constitutional — in
 
 Wharton-Thomas v. United States,
 
 721 F.2d 922 (3d Cir.1983). More recently, the Ninth Circuit, sitting in banc, reversed the
 
 Pacemaker
 
 panel and held that the consensual reference provision is constitutional.
 
 Pacemaker,
 
 supra, 725 F.2d 537 (9th Cir.1984) (in banc). All of these opinions relied on the Supreme Court’s opinion in
 
 Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,
 
 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (plurality opinion), where Justice Brennan, writing for a plurality of four Justices, concluded that section 241(a) of the Bankruptcy Act of 1978, 28 U.S.C. § 1471, impermissibly removed “most, if not all, of ‘the essential attributes of the judicial power’ from the Art. Ill district court, and ... vested those attributes in a non-Art. Ill adjunct.” Id. at 87, 102 S.Ct. at 2880. Before analyzing the constitutional arguments, we briefly review the background of the Federal Magistrate Act of 1979 and the
 
 Northern Pipeline
 
 case.
 

 A.
 
 The Magistrate Statutes
 

 The Federal Magistrates Act of 1968, 28 U.S.C. §§ 631-639 (amended 1976 & 1979), created magistrate positions with an eight-year term of office and empowered the district courts to appoint magistrates to serve their districts. Id. § 631(a), (e). Magistrates were authorized to perform the functions previously carried out by United States commissioners, id. § 636(a)(1), to serve as special masters in civil actions, to assist the district court in the conduct of pretrial and discovery proceedings in civil and criminal actions, to make preliminary review of petitions for habeas corpus and to perform such additional duties as “are not inconsistent with the Constitution and laws of the United States,” id. § 636(b).
 

 The 1968 Act provided for a magistrate’s removal during his term of office for “incompetency, misconduct, neglect of duty, or physical or mental disability.” Id. § 631(h) (now codified at § 631(i)). With minor exceptions not relevant here, only the judges of the district court in which the magistrate served could exercise removal authority. Id.
 

 Congress amended the Magistrates Act in 1976, expanding the duties and powers of magistrates. The 1976 amendments empowered magistrates to determine nondis-positive pretrial motions subject to review by a district judge under a clearly erroneous or contrary to law standard. The amendments also gave magistrates the authority to make findings and recommendations on dispositive pretrial motions and in prisoner cases. A district judge would then conduct a de novo review of those portions of the magistrate’s report or proposed findings or recommendations to which a party objected. 28 U.S.C. § 636(b)(1).
 

 Under the Federal Magistrate Act of 1979, Congress provided that upon the consent of the parties and when specially designated to exercise such authority by the district court in which he serves, a magistrate could also conduct all proceedings in a jury or non-jury civil action and enter final judgment. 28 U.S.C. § 636(c). This provision, which is reproduced in note 1, is under challenge in this case. As already indicated, any discussion of whether this section is constitutional should begin with an analysis of
 
 Northern Pipeline.
 

 B.
 
 Northern Pipeline
 

 The Bankruptcy Act of 1978 established bankruptcy courts “in each judicial district, as an adjunct to the district court for such district.” 28 U.S.C. § 151(a). The judges of these courts were to be appointed for 14-year terms by the President with the advice and consent of the Senate. Id. §§ 152, 153(a). They would be subject to removal by the “judicial council of the circuit” on account of “incompetency, miscon
 
 *113
 
 duct, neglect of duty, or physical or mental disability.” Id. § 153(b). Their salaries were to be set by statute and subject to adjustment under the Federal Salary Act, 2 U.S.C. §§ 351-361. 28 U.S.C. § 154.
 

 These new courts were granted jurisdiction over all “civil proceedings arising under title 11 [the Bankruptcy title] or arising in or related to cases under title 11.” Id. § 1471(b), (c). Bankruptcy courts were vested with all of the “powers of a court of equity, law, and admiralty,” except that they could not “enjoin another court or punish a criminal contempt not committed in the presence of a judge of the court or warranting a punishment of imprisonment.” Id. § 1481.
 
 [3]
 

 The plurality in
 
 Northern Pipeline
 
 easily concluded that “the bankruptcy judges whose offices were created by the Bankruptcy Act of 1978 do not enjoy the protections constitutionally afforded to Art. Ill judges.” 458 U.S. at 60, 102 S.Ct. at 2865. It then examined two arguments that the appellants in that case presented in support of the constitutionality of the Bankruptcy Act. First, the plurality discussed whether the bankruptcy courts could be viewed as legislative courts, established pursuant to Congress’ enumerated Article I powers. Id. at 63, 102 S.Ct. at 2867. Second, it discussed whether the bankruptcy courts could be viewed as proper adjuncts to the district courts and whether the delegation of certain adjudicative functions to bankruptcy judges “is accordingly consistent with the principle that the judicial power of the United States must be vested in Art. Ill courts.” Id. at 76-77, 102 S.Ct. at 2874-2875. Dealing with the first argument, the plurality identified three situations in which Article III does not bar the creation of legislative (Article I) courts. Congress, it stated, could create courts for the territories (and for the District of Columbia), could establish and administer courts martial and could create courts to adjudicate cases involving “public rights.” The plurality then concluded that bankruptcy courts could not be created pursuant to Congress’ Article I powers under any of these three exceptions. Id. at 63-76, 102 S.Ct. at 2867-2874.
 

 In this case, neither appellee nor the government argue that the magistrate statutes created legislative courts. Thus, we will focus on the second argument advanced in
 
 Northern Pipeline
 
 in support of the Bankruptcy Act of 1978, that is, that the bankruptcy courts could be viewed as proper adjuncts to the district courts. The
 
 Northern Pipeline
 
 plurality dealt with this argument by analyzing two cases in which the Court had held that the delegation in question was constitutional:
 
 Crowell v. Benson,
 
 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598 (1932), and
 
 United States v. Raddatz,
 
 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980).
 
 Crowell
 
 involved the use of administrative agencies as factfinders for the adjudication of congressionally-created, “public” rights. The plurality found that
 

 while
 
 Crowell
 
 certainly endorsed the proposition that Congress possesses broad discretion to assign fact-finding functions to an adjunct created to aid in the adjudication of congressionally created statutory rights,
 
 Crowell
 
 does not support the further proposition ... that Congress possesses the same degree of discretion in assigning traditionally judicial power to adjuncts engaged in the adjudication of rights
 
 not
 
 created by Congress.
 

 458 U.S. at 81-82, 102 S.Ct. at 2877.
 

 Because appellee in this case has alleged violations not only of statutory, but also of constitutional rights, the reference to the magistrate must meet standards more stringent than those of
 
 Crowell
 
 if it is to survive constitutional scrutiny. See id. at 82 & n. 34, 83, 102 S.Ct. at 2877 & n. 34, 2878. Thus, the discussion in
 
 Northern
 
 
 *114
 

 Pipeline
 
 of
 
 Raddatz,
 
 where the Court upheld a district judge’s reference of a pretrial motion to a magistrate, is more relevant to our analysis. The
 
 Northern Pipeline
 
 plurality stated that the reference challenged in
 
 Raddatz
 
 was upheld because the magistrate “was subject to sufficient control by an Art. Ill district court.” Id. at 79, 102 S.Ct. at 2875. In fact, the
 
 Raddatz
 
 Court had concluded that “the ultimate de-cisionmaking authority ... clearly remained with the district court.” Id. The
 
 Northern Pipeline
 
 plurality then proceeded to identify the interest that would be adversely affected if the district court did not retain sufficient control as “the principle of separation of powers reflected in Art. III.” Id. at 83, 102 S.Ct. at 2878. The plurality found that the “constitutional system of checks and balances is designed to guard against ‘encroachment or aggrandizement’ by Congress at the expense of the other branches of government.” Id. It then . concluded that since bankruptcy courts would sometimes adjudicate “rights recognized by the Constitution,” id., the sources of the control that Congress would have over those courts could not be seen “merely as incidental extensions of Congress’ power to define rights that it has created.” Id. at 84, 102 S.Ct. at 2878. Instead, such extensions of legislative power “suggest unwarranted encroachments upon the judicial power of the United States, which our Constitution reserves for Art. Ill courts.” Id.
 

 With this background in mind, we proceed to discuss the constitutionality of the consent provision of section 636(c).
 

 C.
 
 Separation of Powers
 

 We first find that unlike the provision of the Bankruptcy Act challenged in
 
 Northern Pipeline,
 
 section 636(c) does not violate the constitutional scheme of separation of powers. We are cognizant, of course, that in discussing this question, the
 
 Northern Pipeline
 
 plurality relied on
 
 Raddatz
 
 and stressed that in that case, even though a magistrate had conducted part of the proceeding, “the ultimate decisionmaking authority ... clearly remained with the district court.” 458 U.S. at 79, 102 S.Ct. at 2875. Appellants argue that because section 636(c) allows magistrates to enter final judgments, the language just quoted from
 
 Northern Pipeline
 
 indicates that the section is constitutionally infirm. To evaluate this argument, we have to focus on the principles that were at stake in that case.
 

 The
 
 Northern Pipeline
 
 plurality, as we have already discussed in the previous section of this opinion, made clear that its concern was over separation of powers. It acknowledged “the literal command of Art. Ill, assigning the judicial power of the United States to courts insulated from Legislative or Executive interference,” id. at 64, 102 S.Ct. at 2868, and that while this command was not absolute, it was subject to only limited exceptions, id. at 63-64, 102 S.Ct. at 2867-2868. The plurality then attempted to draw the line between “permissible extensions of legislative power and impermissible incursions into judicial power,” id. at 83 n. 35, 102 S.Ct. at 2878 n. 35, and concluded that Congress had made “substantial inroads” into functions that the Constitution reserved to Article III judges, id. at 84, 102 S.Ct. at 2878.
 

 Given these principles, it follows that the reason the
 
 Northern Pipeline
 
 plurality emphasized that “ultimate decisionmaking authority” remained with the district court was that such control would make it impossible for other branches to “encroach” on judicial functions. But while “ultimate decisionmaking authority” is a sufficient condition for a finding that a challenged scheme does not offend the policy of separation of powers, it is not a necessary condition for such a finding. What we must decide is whether section 636(c) impermissibly allows district judges to place magistrates under the control of the executive or legislative branches. This conclusion follows .directly from the language used by the
 
 Northern Pipeline
 
 plurality at the end of its discussion of
 
 Rad-datz:
 

 Thus, in
 
 Raddatz
 
 there was no serious threat that the exercise of the judicial power would be subject to incursion by
 
 *115
 
 other branches. “[T]he only conceivable danger of a ‘threat’ to the ‘independence’ of the magistrate comes from within, rather than without the judicial department.”
 

 Northern Pipeline,
 
 458 U.S. at 79 n. 30, 102 S.Ct. at 2875 n. 30 (quoting
 
 Raddatz,
 
 447 U.S. at 685, 100 S.Ct. at 2417 (Black-mun, J., concurring)); see
 
 Wharton-Thomas,
 
 supra, 721 F.2d at 927 (magistrates “are not subjected to pressures from the legislature”).
 

 The relevant question then is whether section 636(c) changes the nature of the pressures on the independence of magistrates. We find that it does not. The major difference between
 
 Raddatz
 
 and this case is that when the parties consent, the magistrate can now order the entry of judgment. 28 U.S.C. § 636(c)(1). Unlike the situation in
 
 Raddatz,
 
 there is no possibility of de novo review by the district court. See
 
 Raddatz,
 
 447 U.S. at 676-77, 100 S.Ct. at 2412-13. But the other factors deemed important in
 
 Northern Pipeline,
 
 see 458 U.S. at 79, 102 S.Ct. at 2875, are present in adjudications under section 636(c). First, magistrates “must be specially designated to exercise such jurisdiction by the district court.” 28 U.S.C. § 636(c)(1). Second, the method of appointment, id. § 631(a) and removal, id. § 631(i), of magistrates was not affected by the 1979 Act; both responsibilities continue to be entrusted to the district court. Finally, the district court retains the power to withdraw the reference. Id. § 636(c)(6). Thus, to the extent that the section 636(c) scheme differs from the arrangement in
 
 Raddatz,
 
 it does so by authorizing district judges to delegate more authority to magistrates. (In the following section, we consider the constitutional implications of this additional delegation.) Section 636(c), however, does not affect the allocation of power between Congress and the district courts. The factors that seem to have concerned the
 
 Northern Pipeline
 
 plurality — that bankruptcy judges were not appointed by the district court and could not be removed by the district court, that bankruptcy courts were vested with independent jurisdiction and that district courts could not withdraw cases from bankruptcy courts, see
 
 Northern Pipeline,
 
 458 U.S. at 79-80 n. 31, 102 S.Ct. at 2875-2876 n. 31 — are simply not present in adjudications under section 636(c), in the same way that they were not present in
 
 Raddatz.
 

 Appellants argue that threats to judicial independence from within the judicial branch may be as dangerous as threats from other branches. See Note, Article III Limits on Article I Courts: The Constitutionality of the Bankruptcy Court and the 1979 Magistrate Act, 80 Colum.L.Rev. 560, 591 (1980). They suggest that the statement in the
 
 Northern Pipeline
 
 plurality that “[t]he guarantee of life tenure insulates the individual judge from improper influence not only by other branches but by colleagues as well,” 458 U.S. at 59 n. 10, 102 S.Ct. at 2865 n. 10, casts doubt on the constitutionality of section 636(c). However, concerns about pressures from within the judiciary do not involve the question that was the focus of the
 
 Northern Pipeline
 
 plurality’s inquiry, namely, separation of powers. See
 
 Wharton-Thomas,
 
 supra, 721 F.2d at 927. Moreover, the
 
 Northern Pipeline
 
 plurality itself explicitly refused to assign any constitutional significance to such internal pressures, 458 U.S. at 79 n. 30, 102 S.Ct. at 2875 n. 30; id. at 80 n. 31, 102 S.Ct. at 2876 n. 31, and distinguished them from considerations that raise separation of powers problems, id. at 59 & n. 10, 102 S.Ct. at 2875 & n. 10. To the extent that non-constitutional, policy considerations are at stake, we defer to the judgment of Congress.
 

 D.
 
 Delegation of Judicial Power
 

 Turning to the next constitutional issue raised by this case, we find that references to magistrates under section 636(c) do not violate an Article III ban against the delegation of judicial power to individuals who are not Article III judges. The landmark challenge to the constitutionality of delegation to magistrates is
 
 United States v. Raddatz,
 
 supra. In that case, the district court referred a suppression motion to a magistrate and ordered the magistrate to
 
 *116
 
 conduct an evidentiary hearing pursuant to 28 U.S.C. § 636(b)(1)(B). The defendant objected to this reference. Litigant consent, however, is not a necessary condition for section 636(b)(1)(B) references — as it is for section 636(c) references — and the district court overruled the objection. Section 636(b)(1)(B) references also differ from § 636(c) references in another significant way: under section 636(b)(1)(B), the magistrate does not decide the motions referred to him, but instead submits “proposed findings of fact and recommendations” to the district court. The section further provides that a district judge “shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.”
 

 The defendant in
 
 Raddatz
 
 challenged the reference on statutory and constitutional grounds. The Court first concluded that the statute did not call for a de novo “hearing” and that a de novo “determination” was sufficient. 447 U.S. at 676, 100 S.Ct. at 2412. Given this construction, it proceeded to analyze whether the statute violated the due process clause of the Fifth Amendment, id. at 677-81, 100 S.Ct. at 2413-15, an issue that we discuss in the next section of this opinion, or Article III of the Constitution, id. at 681-84, 100 S.Ct. at 2415-16. Discussing the latter question, the Court noted that
 

 the statute permits the district court to give to the magistrate’s proposed findings of fact and recommendations “such weight as [their] merit commands and the sound discretion of the judge warrants.”
 

 Id. at 683, 100 S.Ct. at 2416 (quoting
 
 Mathews v. Weber,
 
 423 U.S. 261, 275, 96 S.Ct. 549, 556, 46 L.Ed.2d 483 (1976)). The Court concluded, however, that such “delegation does not violate Art. Ill so long as the ultimate decision is made by the district court.” 447 U.S. at 683, 100 S.Ct. at 2416. Appellants focus on the limiting clause and suggest that it requires us to find that section 636(c) is unconstitutional.
 

 The
 
 Raddatz
 
 Court, however, did not address the question that is before us in this case. The Court stated:
 

 We need not decide whether, as suggested by the Government, Congress could constitutionally have delegated the task of rendering a final decision on a suppression motion to a non-Art. Ill officer. Congress has not sought to make any such delegation.
 

 Id. at 681, 100 S.Ct. at 2415 (citation omitted); see id. at 673, 100 S.Ct. at 2411 (labeling suppression motion as case-“dispositive”). In fact, the question that
 
 Raddatz
 
 reserved is more difficult than the one we need to address in this case. The proposition that the government advanced in
 
 Raddatz
 
 was that delegation to magistrates would be constitutional even in the absence of consent; all that appellee needs to show here is that the delegation is constitutional when the parties consent to the reference.
 

 Like
 
 Raddatz, Mathews v. Weber,
 
 423 U.S. 261, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976), fails to advance the argument that magistrates who receive section 636(c) references are not proper adjuncts to the district court. In that case, the Court upheld a district court’s practice of referring all Social Security benefit cases to magistrates for review and preparation of a recommended decision. In dictum, the Court stated that “[t]he authority — and the responsibility — to make an informed, final determination ... remains with the judge.”
 
 Weber,
 
 423 U.S. at 271, 96 S.Ct. at 554, quoted in
 
 Raddatz,
 
 447 U.S. at 682, 100 S.Ct. at 2415. The Court, however, explicitly noted that it was deciding the case on statutory grounds, and that it was not considering the constitutionality of the delegation of judicial power.
 
 Weber,
 
 423 U.S. at 269 & n. 5, 96 S.Ct. at 553 & n. 5. In fact, the petitioner in that case, the Secretary of Health, Education, and Welfare, “expressly decline[d] to rely on any constitutional argument” in his challenge to the reference. Id. at 269 n. 5, 96 S.Ct. at 553 n. 5.
 

 Similarly, the constitutionality of delegation was not at issue in an earlier magis
 
 *117
 
 trates case,
 
 Wingo v. Wedding,
 
 418 U.S. 461, 94 S.Ct. 2842, 41 L.Ed.2d 879 (1974). There, the Court held that district judges have a statutory duty under 28 U.S.C. § 2243 to “personally hold evidentiary hearings in federal habeas corpus cases,” id. at 472, 94 S.Ct. at 2849, and thus could not delegate this function to magistrates. The holding in
 
 Wedding
 
 was later overruled by the 1976 amendments to the Federal Magistrates Act. See 28 U.S.C. § 636(b)(1)(B).
 

 In summary, in
 
 Raddatz, Weber
 
 and
 
 Wedding,
 
 the Court did not consider the delegation question that is before us in this case. In recent years, however, several circuit courts have addressed the constitutionality of the reference of cases to magistrates for trial. For example, in
 
 DeCosta v. CBS,
 
 520 F.2d 499 (1st Cir.1975), cert. denied, 423 U.S. 1073, 96 S.Ct. 856, 47 L.Ed.2d 83 (1976), the First Circuit held that “it is
 
 constitutionally
 
 and statutorily permissible to refer cases, with the consent of all parties, for initial decisions” to magistrates. Id. at 507-08 (emphasis added). Cf.
 
 Sick v. City of Buffalo,
 
 574 F.2d 689, 690 n. 6 (2d Cir.1978) (“[Tjhere is no ostensible reason for preventing consent to a jury trial before a magistrate or master, assuming the propriety of the appointment in the first instance.”).
 
 DeCosta
 
 also held that the findings of fact in the magistrate’s report should be reviewed under the “clearly erroneous” standard and that his legal conclusions should be subject to full review. 520 F.2d at 508-09.
 

 The consensual reference of a case for trial by a magistrate was also upheld in
 
 Muhich v. Allen,
 
 603 F.2d 1247 (7th Cir.1979). In that case, the Seventh Circuit stated:
 

 Thus, when a civil case properly within. the jurisdiction of an article III court is tried before a magistrate pursuant to an order of reference by the district court, jurisdiction remains vested in the district court and is merely exercised through the medium of the magistrate. In this case, the district court retained its jurisdiction over the litigation by exercising its supervisory powers in the form of
 
 de novo
 
 review, and by invoking its exclusive authority to order the entry of final judgment. The strictures of article III were therefore satisfied.
 

 Id. at 1251 (citations omitted). In
 
 Muhich,
 
 the district court had conducted a de novo review; thus, the Seventh Circuit did not have to face the broader delegation question that is before us in this case. Cf.
 
 Calderon v. Waco Lighthouse for the Blind,
 
 630 F.2d 352 (5th Cir.1980) (finding
 
 statutory
 
 requirement that in references under 28 U.S.C. § 636(b)(3), the district court make a de novo determination of the magistrate’s findings).
 

 While
 
 Wharton-Thomas
 
 and the in banc decision in
 
 Pacemaker,
 
 supra, are direct support for our conclusion that section 636(c) is constitutional, the earlier cases just mentioned are also important for our purposes.
 
 DeCosta,
 
 in particular, came close to deciding the question that is now before. us. While the magistrate there could not enter a final judgment, his report was subject to the same standard of review as that accorded on appeal to a magistrate’s judgment pursuant to section 636(c). See 28 U.S.C. § 636(c)(4) (providing that appeal from magistrate to district court shall be conducted like appeal from district court to court of appeals); id. § 636(c)(3) (providing that for purposes of direct appeal to court of appeals judgment of magistrate shall be treated in the same manner as judgment of district court). In addition, even under section 636(c) references, the contempt powers remain with the district court. Id. § 636(e). Thus, the differences between the report of the magistrate in
 
 DeCosta
 
 and a section 636(c) judgment are, for the most part, differences of form and not of substance.
 

 It is also important to note that the references at issue in
 
 DeCosta
 
 and
 
 Muhich
 
 took place before the adoption of section 636(c), pursuant to the more general provision of 28 U.S.C. § 636(b)(3): “A magistrate may be assigned such additional duties as are not inconsistent with the Constitution and laws of the United States.” The argument
 
 *118
 
 for constitutionality is now stronger, since Congress has specifically authorized the references in question after giving serious consideration to the constitutional arguments, S.Rep. No. 74, 96th Cong., 1st Sess. 4, reprinted in 1979 U.S.Code Cong. & Ad. News 1469, 1473; H.R.Rep. No. 287, 96th Cong., 1st Sess. 7-9 (1979). See, e.g.,
 
 Northern Pipeline,
 
 458 U.S. at 61, 102 5.Ct. at 2866;
 
 Fullilove v. Klutznick,
 
 448 U.S. 448, 472-73, 100 S.Ct. 2758, 2771-72, 65 L.Ed.2d 902 (1980).
 

 Our inquiry, however, does not stop here. While we agree with the holding in
 
 DeCos-ta,
 
 we do not find it necessary to adopt the reasoning advanced by that opinion, see 520 F.2d at 505, and by the government in this case, that delegation to magistrates can be analogized to delegation to arbitrators. Appellants argue that the analogy is not helpful because arbitrators are hired and paid by the parties, and are wholly “outside” the district court. To the extent that the district court does not “refer” cases to arbitrators, who are instead chosen exclusively by agreement of the parties, it would appear that arbitration does not involve the same type of delegation of judicial power as we have in this case. See
 
 Pacemaker,
 
 supra, 712 F.2d at 1311, rev’d in banc on other grounds, 725 F.2d 537 (9th Cir.1984). We find more instructive the analogy to special masters, who, like magistrates, are properly seen as adjuncts to the district court.
 

 Under Fed.R.Civ.P. 53(b), the district judges may refer pending civil cases to masters. Pursuant to such references, a master may take evidence and conduct hearings, Fed.R.Civ.P. 53(c), and must file with the district court a report normally containing his findings of fact and conclusions of law. Fed.R.Civ.P. 53(e)(1). In nonjury cases, the district judge must accept the master’s findings of fact unless they are “clearly erroneous.” Fed.R.Civ.P. 53(e)(2). The master’s legal conclusions, however, are entitled to no special deference. See, e.g.,
 
 Fogel v. Chestnutt,
 
 668 F.2d 100, 116-17 (2d Cir.1981), cert. denied, 459 U.S. 828, 103 S.Ct. 65, 74 L.Ed.2d 66 (1982);
 
 Oil, Chemical & Atomic Workers Int’l Union v. NLRB,
 
 547 F.2d 575, 580 (D.C.Cir.1976), cert. denied, 431 U.S. 966, 97 S.Ct. 2923, 53 L.Ed.2d 1062 (1977). In addition, if the parties consent, the master’s findings of fact can be final. Fed.R. Civ.P. 53(e)(4).
 

 It is true that in
 
 La Buy v. Howes Leather Co.,
 
 352 U.S. 249, 259, 77 S.Ct. 309, 315, 1 L.Ed.2d 290 (1957), the Supreme Court held that references to masters should take place only under “exceptional circumstances.” But in
 
 La Buy,
 
 the Court merely construed Fed.R.Civ.P. 53(b), which provides that “[a] reference to a master shall be the exception and not the rule.” The Court did not suggest that more delegation would be unconstitutional, but merely that it was not authorized by Congress and would be undesirable on policy grounds, id. at 253 n. 5, 259, 77 S.Ct. at 312 n. 5, 315; see
 
 Cruz v. Hauck,
 
 515 F.2d 322, 330 (5th Cir.1975) (“The ineluctable conclusion is that the ‘exceptional condition’ limitation results from the deficiencies of the master system rather than from constitutional limitations upon non-Article III judges.”), cert. denied, 424 U.S. 917, 96 S.Ct. 1118, 47 L.Ed.2d 322 (1976). In contrast, not only does section 636(c) provide an adequate statutory basis for delegation, but it also eliminates many of the defects of the master system that influenced the Supreme Court in
 
 La Buy:
 
 “the expense of the procedure to the litigants, the likelihood of delays in the litigation, the use of attorneys appointed on an
 
 ad hoc
 
 basis, a master’s lack of experience in judicial work, and the potential conflicts in the master’s time and interests.” McCabe, The Federal Magistrate Act of 1979, 16 Harv.J.Legis. 343, 373 (1979); see Silberman, Masters and Magistrates — Part II: The American Analogue, 50 N.Y.U.L.Rev. 1297, 1328 (1975); Comment, An Adjudicative Role for Federal Magistrates in Civil Cases, 40 U.Chi.L.Rev. 584, 588 (1973). In addition, Congress can be viewed as having found implicitly that the overcrowding of district court dockets gives rise to “exceptional circumstances” justifying delegation to magistrates in the types of cases covered by section 636(c).
 
 *119
 
 See Silberman, supra, 50 N.Y.U.L.Rev. at 1332 & n. 197.
 

 The analogy to masters is not perfect because masters cannot order the entry of final judgment. As we have stated in our discussion of
 
 DeCosta,
 
 however, the presumptions attached to a master’s report make the scope of the delegation very similar to that authorized by section 636(c). Cf. McCabe, supra, 16 Harv.J.Legis. at 371 (“In essence, then, a trial judge who has appointed a special master in a nonjury civil case has transformed his role into that of an appellate court, at least with regard to the resolution of factual issues”). In fact, Fed.R.Civ.P. 53(e)(4), which allows the parties to agree to make the master’s factual findings final, involves more delegation of judicial power than that at issue under section 636(c). Finally, we stress that we do not need to rely wholly on the analogy between a magistrate’s judgment under 28 U.S.C. § 636 and a master’s report under Fed.R.Civ.P. 53(b) because all section 636 references are consensual. The issue of consent is significant to our discussion for several reasons.
 

 First, while appellants correctly argue that parties may not confer jurisdiction on a court by consent, consent can, in certain cases, be a necessary condition for the exercise of jurisdiction. For example, under the Bankruptcy Act of 1898, bankruptcy referees could not try actions that did not involve property in the actual or constructive possession of the bankruptcy court, except by consent. 11 U.S.C. § 46(b) (repealed 1978); see
 
 MacDonald v. Plymouth County Trust Co.,
 
 286 U.S. 263, 266, 52 S.Ct. 505, 76 L.Ed. 1093 (1932). In fact, all four opinions filed in
 
 Northern Pipeline
 
 noted the importance of consent in this context. See 458 U.S. at 80 n. 31, 102 S.Ct. at 2876 n. 31 (plurality opinion) (“Before the [1979] Act the referee had no jurisdiction” under 11 U.S.C. § 46(b)
 
 “except with consent.”))
 
 id. at 91, 102 S.Ct. at 2881 (Rehnquist, J., concurring) (“I would, therefore, hold so much of the Bankruptcy Act of 1978 as enables a Bankruptcy Court to entertain and decide Northern’s lawsuit
 
 over Marathon’s objection
 
 to be violative of Art. Ill of the United States Constitution.”); id. at 92, 102 S.Ct. at 2882 (Burger, C.J., dissenting) (stating that absence of consent was central to Court’s holding); id. at 95, 102 S.Ct. at 2884 (White, J., dissenting) (arguing that Court’s holding should be limited to cases not involving consent) (emphasis added).
 

 Second, consent can affect the limits of permissible delegation. This proposition was expressed most clearly by the Supreme Court in
 
 Kimberly v. Arms,
 
 129 U.S. 512, 9 S.Ct. 355, 32 L.Ed. 764 (1889). In that case, the Court stated:
 

 It is not within the general province of a master to pass upon all the issues in an equity case, nor is it competent for the court to refer the entire issue to him without the consent of the parties.... But when the parties consent to the reference of a case to a master or other officer to hear and decide all the issues therein, and report his findings, both of fact and of law, and such reference is entered as a rule of the court, the master is clothed with very different powers from those which he exercises upon ordinary references, without such consent.
 

 Id. at 524, 9 S.Ct. at 359. It then stated that the master's findings in a consensual reference would be “taken as presumptively correct” and subject to review “when there has been manifest error in the consideration given to the evidence, or in the application of the law, but not otherwise.” Id. The same concept is embodied in Fed. R.Civ.P. 53(e), which provides for a different standard of review of a master’s report when the reference is consensual.
 

 Third, the consent provision of section 636(c) provides a constraint against the wholesale- delegation of judicial power to adjuncts of the district court. Thus, it helps ensure that the delegation will not reach a magnitude that would trigger Article III concerns. See Note, Article III Constraints and the Expanding Civil Jurisdiction of Federal Magistrates: A Dissenting View, 88 Yale L.J. 1023, 1038 (1979) (Arti-
 
 *120
 
 ele III requires at least “some delegation constraints”).
 

 E.
 
 Due Process
 

 In
 
 Raddatz,
 
 the Court considered whether the reference of a suppression motion, over defendant’s objection, to a magistrate violated a due process right to have a case heard before an Article III judge. The Court stated that the guarantees of due process call for a “hearing appropriate to the nature of the case.” 447 U.S. at 677, 100 S.Ct. at 2413. It concluded that the reference did not violate the defendant’s due process rights. Id. at 680, 100 S.Ct. at 2414.
 
 Raddatz
 
 did not address the question whether the reference of a civil case for trial and entry of final judgment would violate the due process rights of the parties. In this case, we need not deal with that question either, because all references under 28 U.S.C. § 636(c) are by consent of the parties. We find that to the extent that litigants may have a due process right to appear before an Article III judge in a civil case, they may freely waive that right. Indeed, the Supreme Court has held that important constitutional rights may be waived even in criminal cases, which generally raise more troubling due process problems. See, e.g.,
 
 Patton v. United States,
 
 281 U.S. 276, 312, 50 S.Ct. 253, 263, 74 L.Ed. 854 (1930) (waiver of right to jury trial);
 
 Adams v. United States,
 
 317 U.S. 269, 275, 63 S.Ct. 236, 240, 87 L.Ed. 268 (1942) (waiver or right to counsel); see also Fed.R.Civ.P. 38(d) (right to jury trial in civil cases automatically waived unless affirmatively exercised). As we have already stated, we do not think that appellants were coerced into consenting to the reference, and we find that the procedures used to protect the voluntariness of the consent were adequate.
 

 The judgment of the district court is affirmed.
 

 [1]
 

 . 28 U.S.C. § 636(c) provides, in pertinent part:
 

 Notwithstanding any provision of law to the contrary—
 

 (1) Upon the consent of the parties, a full-time United States magistrate or a part-time United States magistrate who serves as a full-time judicial officer may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case, when specially designated to exercise such jurisdiction by the district court or courts he serves. Upon the consent of the parties, pursuant to their specific written request, any other part-time magistrate may exercise such jurisdiction, if such magistrate meets the bar membership requirements set forth in section 631(b)(1) and the chief judge of the district court certifies that a full-time magistrate is not reasonably available in accordance with guidelines established by the judicial council of the circuit. When there is more than one judge of a district court, designation under this paragraph shall be by the concurrence of a majority of all the judges of such district court, and when there is no such concurrence, then by the chief judge.
 

 (2) If a magistrate is designated to exercise civil jurisdiction under paragraph (1) of this subsection, the clerk of court shall, at the time the action is filed, notify the parties of their right to consent to the exercise of such jurisdiction. The decision of the parties shall be communicated to the clerk of court. Thereafter, neither the district judge nor the magistrate shall attempt to persuade or induce any
 
 *110
 
 party to consent to reference of any civil matter to a magistrate. Rules of court for the reference of civil matters to magistrates shall include procedures to protect the voluntariness of the parties’ consent.
 

 (3) Upon entry of judgment in any case referred under paragraph (1) of this subsection, an aggrieved party may appeal directly to the appropriate United States court of appeals from the judgment of the magistrate in the same manner as an appeal from any other judgment of a district court. In this circumstance, the consent of the parties allows a magistrate designated to exercise civil jurisdiction under paragraph (1) of this subsection to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure. Nothing in this paragraph shall be construed as a limitation of any party’s right to seek review by the Supreme Court of the United States.
 

 (4) Notwithstanding the provisions of paragraph (3) of this subsection, at the time of reference to a magistrate, the parties may further consent to appeal on the record to a judge of the district court in the same manner as on an appeal from a judgment of the district court to a court of appeals. Wherever possible the local rules of the district court and the rules promulgated by the conference shall endeavor to make such appeal expeditious and inexpensive. The district court may affirm, reverse, modify, or remand the magistrate’s judgment.
 

 (5) Cases in the district courts under paragraph (4) of this subsection may be reviewed by the appropriate United States court of appeals upon petition for leave to appeal by a party stating specific objections to the judgment. Nothing in this paragraph shall be construed to be a limitation on any party’s right to seek review by the Supreme Court of the United States.
 

 (6) The court may, for good cause shown on its motion, or under extraordinary circumstances shown by any party, vacate a reference of a civil matter to a magistrate under this subsection.
 

 [2]
 

 . The complaint also listed among the defendants two unnamed deputy sheriffs. In January 1976, the action against the Sheriff and one of the deputy sheriffs was dismissed.
 

 [3]
 

 . The provisions of the Bankruptcy Act described above were not to become effective until April 1, 1984. Congress, however, provided for a transition period before the new provisions took full effect. The
 
 Northern Pipeline
 
 plurality found that the transition rules gave bankruptcy judges "essentially all of the jurisdiction and powers” that they would acquire in 1984.
 
 Northern Pipeline,
 
 458 U.S. at 56, 102 S.Ct. at 2863.