Vivian L. FIELDS, et al.

v.

**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, Appellant.**

**Alfred George Futrell.**

No. 83–1186.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 26, 1983.

Decided Sept. 11, 1984.

As Amended Sept. 18, 1984.

Jordan S. Himelfarb, Washington, D.C., for appellant.

Milton Heller, Washington, D.C., with whom William G. Applestein, Washington, D.C., was on the brief, for appellees.

Before WRIGHT *, TAMM, Circuit Judges, and MacKINNON, Senior Circuit Judge.

Opinion for the Court filed by Senior Circuit Judge MacKINNON.

MacKINNON, Senior Circuit Judge:

This is a personal injury action arising out of a bus accident in the District of Columbia. By consent of the opposing parties, plaintiff's suit in the United States District Court was referred to a United States magistrate for trial by jury, to be followed by entry of judgment on the order of the magistrate. The jury awarded substantial verdicts against defendant, who now appeals on the sole ground that the magistrate erred in denying a motion for a new trial based on the alleged excessiveness of the jury awards to plaintiffs.

Prior to deciding the merits issue on appeal, we must first confront the basic question of our jurisdiction to decide the case— whether trial of this case before the magistrate, pursuant to the Magistrates Act and with the consent of the parties, as required by said Act, was inconsistent with the command of Article III that the federal judicial power be vested in judges who "hold their Offices during good Behavior." [1] We conclude that, with respect to this action, the jurisdiction of the District Court was exercised in conformity with the Constitution. The procedure here employed—a reference authorized by statute and with the voluntary consent of both parties—was not offensive to the constitutional requirements with respect to the exercise of federal judicial power. On the merits, we cannot find the jury verdicts to be excessive, and therefore affirm the denial of the motion for a new trial.

## I. THE FACTUAL AND PROCEDURAL RECORD

The accident occurred on May 21, 1981, at a street corner in the heart of the District of Columbia. Mrs. Fields was a passenger on the Metro bus operated by the Washington Metropolitan Area Transit Authority ("WMATA").[2] Upon the collision, she was thrown to the floor of the vehicle. Mrs. Fields, a District of Columbia resident (Joint Appendix 38), sued WMATA in the United States District Court for the District of Columbia for personal injuries sustained by her in the accident. Her husband joined in the suit for loss of services and consortium. The causes of action asserted by plaintiffs were founded on the limited waiver of sovereign immunity found in Section 80 of the Washington Metropolitan Area Transit Regulation Compact (the "Compact"), as amended and adopted by Congress.[3] No diversity of citizenship was alleged. Jurisdiction was based solely on Section 81 of the Compact, as adopted by Congress; that provision confers jurisdiction over tort suits against WMATA concurrently on the United States District Courts in the two states and the District, and on the state courts of general jurisdiction. Compact § 81;[4] *see Qasim v. Wash-*

---

* Circuit Judge Wright did not participate in the disposition of this case or in this opinion.

1. U.S. Const., Art. III, § 1.

2. WMATA is an agency of the governments of Maryland, Virginia, and the District of Columbia, created by an interstate compact, with the consent and approval of Congress. Washington Metropolitan Area Transit Regulation Compact § 4, adopted in D.C.Code § 1–2411 (1981); *see* U.S. Const. Art. I, § 10, cl. 3.

3. Section 80 of the Compact, adopted in D.C. Code § 1–2431 (1981), provides:

 The Authority shall be liable for its contracts and for its torts and those of its Directors, officers, employees and agent [sic] committed in the conduct of any proprietary function, in accordance with the law of the applicable signatory (including rules on conflict of laws), but shall not be liable for any torts occurring in the performance of a governmental function. The exclusive remedy for such breach of contracts and torts for which the Authority shall be liable, as herein provided, shall be by suit against the Authority. Nothing contained in this Title shall be construed as a waiver by the District of Columbia, Maryland, Virginia and the counties and cities within the Zone of any immunity from suit.

4. Section 81 of the Compact, adopted in D.C. Code § 1–2431 (1981), provides:

 The United States district courts shall have original jurisdiction, concurrent with the

*ington Metropolitan Area Transit Authority,* 455 A.2d 904, 906–07 (D.C.) (*en banc*), *cert. denied,* 461 U.S. 929, 103 S.Ct. 2090, 77 L.Ed.2d 300 (1983) (holding that Section 81 confers concurrent jurisdiction over cases arising within the District of Columbia on the United States District Court and on the local court of general jurisdiction, the District of Columbia Superior Court).

Pursuant to the Magistrates Act of 1979, 28 U.S.C. § 636(c) (Supp. V 1981),[5] and indisputably upon the express consent of all

parties, trial of the case was referred by the District Court to the magistrate. By stipulation, defendant admitted liability; the only issue for trial was damages. The magistrate presided over a jury trial, and the jury returned verdicts in the amounts of $175,000 for Mrs. Fields and $50,000 for Mr. Fields. WMATA subsequently moved for a new trial on the sole ground that the verdicts were excessive. The motion was denied. In accordance with the Act,[6] the magistrate then ordered that judgment be entered in favor of plaintiffs. Defendant

---

courts of Maryland and Virginia, of all actions brought by or against the Authority and to enforce subpoenas issued pursuant to the provisions of Title III. Any such action initiated in a state court shall be removable to the appropriate United States district court in the manner provided by § 1446 of Title 28, United States Code.

5. 28 U.S.C. § 636(c)(1–6) provides for consensual referrals of civil cases in the United States District Courts to magistrates:

(c) Notwithstanding any provision of law to the contrary—

(1) Upon the consent of the parties, a full-time United States magistrate or a part-time United States magistrate who serves as a full-time judicial officer may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case, when specially designated to exercise such jurisdiction by the district court or courts he serves. Upon the consent of the parties, pursuant to their specific written request, any other part-time magistrate may exercise such jurisdiction, if such magistrate meets the bar membership requirements set forth in section 631(b)(1) and the chief judge of the district court certifies that a full-time magistrate is not reasonably available in accordance with guidelines established by the judicial council of the circuit. When there is more than one judge of a district court, designation under this paragraph shall be by the concurrence of a majority of all the judges of such district court, and when there is no such concurrence, then by the chief judge.

(2) If a magistrate is designated to exercise civil jurisdiction under paragraph (1) of this subsection, the clerk of court shall, at the time the action is filed, notify the parties of their right to consent to the exercise of such jurisdiction. The decision of the parties shall be communicated to the clerk of court. Thereafter, neither the district judge nor the magistrate shall attempt to persuade or induce any party to consent to reference of any civil matter to a magistrate. Rules of court for the

reference of civil matters to magistrates shall include procedures to protect the voluntariness of the parties' consent.

(3) Upon entry of judgment in any case referred under paragraph (1) of this subsection, an aggrieved party may appeal directly to the appropriate United States court of appeals from the judgment of the magistrate in the same manner as an appeal from any other judgment of a district court. In this circumstance, the consent of the parties allows a magistrate designated to exercise civil jurisdiction under paragraph (1) of this subsection to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure. Nothing in this paragraph shall be construed as a limitation of any party's right to seek review by the Supreme Court of the United States.

(4) Notwithstanding the provisions of paragraph (3) of this subsection, at the time of reference to a magistrate, the parties may further consent to appeal on the record to a judge of the district court in the same manner as on an appeal from a judgment of the district court to a court of appeals. Wherever possible the local rules of the district court and the rules promulgated by the conference shall endeavor to make such appeal expeditious and inexpensive. The district court may affirm, reverse, modify, or remand the magistrate's judgment.

(5) Cases in the district courts under paragraph (4) of this subsection may be reviewed by the appropriate United States court of appeals upon petition for leave to appeal by a party stating specific objections to the judgment. Nothing in this paragraph shall be construed to be a limitation on any party's right to seek review by the Supreme Court of the United States.

(6) The court may, for good cause shown on its own motion, or under extraordinary circumstances shown by any party, vacate a reference of a civil matter to a magistrate under this subsection.

6. *Id.* § 636(c)(1).

appealed directly to this Court, pursuant to the statute,[7] from denial of the motion.

Prior to hearing oral argument, we ordered the parties to brief the jurisdictional question of whether the magistrate could constitutionally preside over the case and enter judgment therein. Having considered the parties' submissions, including the brief of intervenor the United States, and in particular the relevance of several recent Supreme Court and federal appellate court decisions, we turn to the adequacy of the jurisdictional basis for the judgment entered in the District Court.

## II. THE CONSTITUTIONALITY OF THE MAGISTRATES ACT PROCEDURE HERE APPLIED

The threshold jurisdictional question here is whether, upon consensual reference, a magistrate could properly try this case. We observe at the outset that six Circuit Courts have very recently addressed the general question of the constitutionality of Section 636(c) of the Magistrates Act, as that provision provides a procedure for federal civil cases. Those courts have unanimously concluded that the reference of cases to magistrates is constitutionally valid.[8] We agree.

Several of those recent decisions examine in some detail the workings of references of federal civil cases to magistrates under the Magistrates Act;[9] rather than an extended discussion of those decisions, we will simply state the basics. Magistrates are appointed for eight-year terms by, and may be removed by, the federal judiciary in each district. 28 U.S.C. § 631(a), (i). The magistrates are paid by Congress, and they are not protected from reduction in their compensation. *Id.* § 634. Civil cases instituted in the District Courts of the United States come before magistrates only upon the voluntary consent of all parties, and

local rules must ensure that conditions exist under which litigants may make a truly voluntary choice. *Id.* § 636(c)(1–2). District court judges may revoke references to magistrates under certain circumstances; thus, the federal District Court is required to exercise some measure of superintendance. *Id.* § 636(c)(5). Once a reference has been made, the magistrate has full authority to try the case, essentially in the same manner as an Article III trial judge would, and is empowered to "order the entry of judgment in the case." *Id.* § 636(c)(1), (3). Appeal is directly to the United States Court of Appeals, unless the parties stipulate that an appeal may be taken to the District Court. *Id.* § 636(c)(3–4). Based on this outline of the Magistrates Act procedure in civil cases, there is nothing out of the ordinary in the manner in which this case proceeded.

The jurisprudence on Article III jurisdiction is not, quite regrettably, the clearest of constitutional fields. One Supreme Court justice has referred to the leading cases as "but landmarks on a judicial 'darkling plain' where ignorant armies have clashed by night." *Northern Pipeline Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 91, 102 S.Ct. 2858, 2881, 73 L.Ed.2d 598 (1982) (Rehnquist, J., concurring in judgment). Notwithstanding that this case unavoidably presents some difficulty under such circumstances, we must uphold the District Court procedure in this case. We conclude that the statutory procedure for consensual reference of a case to a magistrate is not constitutionally defective. The courts that have faced up to the constitutional issues, unanimously upholding the Article III validity of the section 636(c), have produced well-researched, well-reasoned, and sound opinions. *See supra* n. 8. We do not presume to attempt to outdo

---

**7.** *Id.* § 636(c)(3).

**8.** *Lehman Bros. Kuhn Loeb, Inc. v. Clark Oil & Refining Corp.*, 739 F.2d 1313 (8th Cir.1984) (en banc); *Puryear v. Ede's Ltd.*, 731 F.2d 1153 (5th Cir.1984); *Goldstein v. Kelleher*, 728 F.2d 32 (1st Cir.1984); *Collins v. Foreman*, 729 F.2d 108 (2d Cir.1984); *Pacemaker Diagnostic Clinic of America, Inc. v. Instromedix, Inc.*, 725 F.2d 537 (9th

Cir.1984) (en banc); *Wharton-Thomas v. United States*, 721 F.2d 922 (3d Cir.1983).

**9.** See *Goldstein, supra*, 728 F.2d at 35; *Collins, supra*, 729 F.2d at 112; *Pacemaker, supra*, 725 F.2d at 542, 543, 544–46; *Wharton-Thomas, supra*, 721 F.2d at 927.

their efforts. Instead, we merely state with approval our understanding of what those decisions hold, and beyond that, point to what we regard to be the strongest Supreme Court authority for upholding the constitutionality of the Magistrates Act.

 Read together, the extensive decisions of the First, Second, Third, and Ninth Circuits rest on two related propositions. First, once the jurisdiction of the District Court over the case has been established, the parties may freely consent to trial by an officer within the court who does not enjoy full Article III protections, without offending that constitutional provision. *See Goldstein, supra,* 728 F.2d at 35–36; *Collins, supra,* 729 F.2d at 119–20; *Pacemaker, supra,* 725 F.2d at 541–44; *Wharton-Thomas, supra,* 721 F.2d at 926–28. In this circumstance, the litigants suffer no detriment to their personal interests, in the nature of due process rights to an Article III forum. Second, the degree to which magistrates are controlled by the Article III judiciary—both institutionally through appointment and general supervision, and more particularly through oversight by the district court judge of the individual magistrates' handling of each case—avoids any violation of the separation-of-powers principles that underly the Article III protections designed to ensure an independent judiciary. *See Goldstein, supra,* 728 F.2d at 36; *Collins, supra,* 729 at 114–15; *Pacemaker, supra,* 725 F.2d at 544–47; *Wharton-Thomas, supra,* 721 F.2d at 926, 928–29. We agree fully that the requirement of the Magistrates Act that the parties freely consent to the procedure, along with the ac-

countability of magistrates to the Article III judiciary, avoid any constitutional infirmity. This statute is thus sharply distinguishable from the jurisdictional scheme of the Bankruptcy Act of 1978, involving similarly nontenured judges, that was recently struck down as violative of Article III. *See Northern Pipeline, supra.*[10]

 We have no doubt that our decision today, along with those of the six circuits that have previously considered this issue, is ultimately consistent with Article III jurisprudence, sprawling though that body of case law might at times appear. While agreeing generally with the citations of authority across the circuits, we wish to call particular attention to one Supreme Court case that has received varying degrees of consideration elsewhere, but which seems to us to be virtually dispositive of the issue. In *Heckers v. Fowler,* 69 U.S. (2 Wall.) 123, 17 L.Ed. 759 (1865), the Court approved a procedure, permitted by the rules of the United States Circuit Court, under which the litigants freely consented that the case would be assigned to a referee for trial. *According to the parties' stipulation, judgment was to be entered by the clerk directly upon the referee's report of his decision, without any intervening presentation to the 1864 circuit trial judge. Id.* at 133. That consensual procedure, virtually identical to that here in issue, was followed, and thereafter was unanimously approved by the Court. The Supreme Court has never indicated any question as to the continuing vitality of its decision in *Heckers,* which therefore stands as good law today.[11] If such practice may be authorized by a court rule, then surely it

---

**10.** There was no opinion for the full Court in *Northern Pipeline.* Justice Brennan wrote for himself and three others; that opinion, however, failed to command the approval of a majority. 458 U.S. at 52–89, 102 S.Ct. at 2862–80 (Brennan, J., joined by Marshall, Blackmun, and Stevens, JJ.). Thus, that opinion, which included extensive dicta that might be considered relevant to this case, does not control our decision today. Nor does the concurring opinion, *id.* at 89–92, 102 S.Ct. at 2880–82 (Rehnquist, J., concurring in the judgment, joined by O'Connor, J.), dictate a result here. The Bankruptcy Act of 1978 there under scrutiny did not provide for supervision by the Article

III judiciary as extensive as that under the Magistrates Act of 1979; in addition, the concurring opinion specifically rested in part on the absence of mutual consent in that case. *Id.* at 91, 102 S.Ct. at 2881.

**11.** Subsequent cases in which the Supreme Court has relied upon its decision in *Heckers* include the following: *Red Cross Line v. Atlantic Fruit Co.,* 264 U.S. 109, 121–22, 44 S.Ct. 274, 276, 68 L.Ed. 582 (1924); *Ex parte Peterson,* 253 U.S. 300, 314, 40 S.Ct. 543, 547, 64 L.Ed. 919 (1920); *Shipman v. Straitsville Cent. Mining Co.,* 158 U.S. 356, 361, 15 S.Ct. 886, 887, 39 L.Ed. 1015 (1895); *Roberts v. Benjamin,* 124 U.S. 64, 71–72,

may be authorized by a carefully drafted federal statute, particularly when Congress has carefully weighed the need for improvement of judicial efficiency, and has also been very attentive to the constitutional dimensions of the interests at stake.[12] By virtue of the *Heckers* precedent, we believe ourselves bound to uphold Section 636(c) of the Magistrates Act.[13]

### III. THE MERITS

■ We now turn to the substantive issue upon which WMATA appealed—the alleged excessiveness of the verdicts. Our review in such cases is limited to instances where the amounts are so grossly excessive that the decision of the trial judge (or magistrate) to let them stand amounts to an abuse of discretion. *See Taylor v. Washington Terminal Co.,* 409 F.2d 145, 148 (D.C.Cir.), *cert. denied,* 396 U.S. 835, 90 S.Ct. 93, 24 L.Ed.2d 85 (1969); *Koninklijke Luchtvaart Maatschappij N.V. KLM v. Tuller,* 292 F.2d 775 (D.C.Cir.), *cert. denied,* 368 U.S. 921, 82 S.Ct. 243, 7 L.Ed.2d 136 (1961). Appellant concedes the applicability of this standard, but argues that even under this stringent test, the evidence before the District Court could not sustain the verdicts. We have reviewed the record of this case—in particular the testimony of the plaintiffs, of Virgie Nichols, and of the

medical experts—and can find no substantial discrepancy between the testimony and the jury's awards. The amount of damages was for the jury to decide, which it did within permissible legal bounds. Accordingly, we affirm the judgment of the District Court in all respects.

*Judgment accordingly.*

---

8 S.Ct. 393, 395–396, 31 L.Ed. 334 (1888); *Bond v. Dustin,* 112 U.S. 604, 606, 5 S.Ct. 296, 297, 28 L.Ed. 835 (1884).

**12.** The legislative history reveals that Congress gave close consideration to the constitutional issues surrounding the Magistrates Act of 1979. *See* S.Rep. No. 74, 96th Cong., 1st Sess. 4, *reprinted in* 1979 U.S.Code Cong. & Ad.News 1469, 1473; H.R.Rep. No. 287, 96th Cong., 1st Sess. 7–9 (1979).

**13.** Appellees and intervenor the United States urge as an additional ground for upholding the District Court procedure, that Article III is inapplicable to this case. Supplemental Brief for Appellees at 2–6; Brief for Intervenor the United States at 33–34. Because we hold that the section 636(c) Magistrates Act procedure comports with Article III, we need not resolve those additional contentions. In here discussing them we intend only to outline the difficult and troublesome issues raised by such arguments. We express no opinion as to the validity of the contentions. We note that by its very nature,

this action is to be distinguished from the considerable majority of civil cases tried before federal magistrates outside the District of Columbia. The claims by residents of the District of Columbia arose locally within the District, and were litigated in the United States District Court for the District of Columbia, pursuant to the jurisdiction provided for in the WMATA Compact. In addition, these are claims against a governmental entity. These facts are of conceivable significance, given the undoubtable constitutional authority of Congress to create Article I courts to adjudicate local cases arising within the District, *see Palmore v. United States,* 411 U.S. 389, 397, 402–03, 93 S.Ct. 1670, 1678–79, 36 L.Ed.2d 342 (1973), and Congress' Article I authority to establish adjudicative agencies to handle cases involving "public rights" questions. *See Northern Pipeline, supra,* 458 U.S. at 63–64, 102 S.Ct. at 2867–2868 (dicta); *Atlas Roofing Co. v. Occupational Safety and Health Review Comm'n,* 430 U.S. 442, 450 n. 7, 97 S.Ct. 1261, 1266 n. 7, 51 L.Ed.2d 464 (1977); *Ex parte Bakelite Corp.,* 279 U.S. 438, 452, 49 S.Ct. 411, 413, 73 L.Ed. 789 (1929).